[No. S046778. Apr. 22, 1996.]

In re CHANTAL S., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
RANDALL S., Defendant and Appellant.

## COUNSEL

Thomas L. Hardy, under appointment by the Supreme Court, for Defendant and Appellant.

William C. Katzenstein, County Counsel, and Jennifer Williams, Deputy County Counsel, for Plaintiff and Respondent.

Lloyd M. Harmon, Jr., County Counsel (San Diego), Susan Strom, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Respondent.

Lawrence R. Stidham, under appointment by the Supreme Court, for Minor.

## OPINION

**LUCAS, C. J.**—May a juvenile court, when terminating its dependency jurisdiction, issue an order conditioning visitation on a parent's participation in a counseling program? If so, is the juvenile court bound by the requirements of Family Code section 3190, which governs counseling orders issued by a family court? The Court of Appeal answered these questions "yes" and "no" respectively, thereby creating a conflict with *In re Katherine M.* (1994) 27 Cal.App.4th 91 [33 Cal.Rptr.2d 298] (*Katherine M.*). We granted review to resolve the conflict, and affirm.

### I. THE DISTINCTION BETWEEN JUVENILE AND FAMILY COURTS

At the outset it is helpful to clarify the distinction between a "juvenile court," and its orders, and a "family court," and its orders. A "juvenile court" is a superior court exercising limited jurisdiction arising under juvenile law. (*In re Lisa R.* (1975) 13 Cal.3d 636, 643 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].) Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code.

By contrast, "family court" refers to the activities of one or more superior court judicial officers who handle litigation arising under the Family Code. It is not a separate court with special jurisdiction, but is instead the superior court performing one of its general duties. (See Edwards, *The Relationship of Family and Juvenile Courts in Child Abuse Cases* (1987) 27 Santa Clara L.Rev. 201, 202, fn. 3 (Edwards).)

The two courts have separate purposes. The family court is established to provide parents a forum in which to resolve, inter alia, private issues relating to the custody of and visitation with children. In that setting, parents are presumed to be fit and capable of raising their children. (Fam. Code, § 3061.) The juvenile court, by contrast, provides the state a forum to "restrict parental behavior regarding children, . . . and . . . to remove children from the custody of their parents or guardians." (Edwards, *supra*, 27 Santa Clara L.Rev. at p. 206, fns. omitted.) When, as in this matter, a juvenile court hears a dependency case under section 300 of the Welfare and Institutions Code, the court deals with children who have been seriously abused, abandoned, or neglected. The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child. (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31 [5 Cal.Rptr.2d 208] (*Roger S.*).) Accordingly, although both courts focus on the best interests of the child, "[t]he presumption of parental fitness that underlies custody law in the family court . . . does not apply to dependency cases" decided in the juvenile court. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 [17 Cal.Rptr.2d 759] (*Jennifer R.*).)

## II. FACTS AND PROCEDURE

Pursuant to a family court order that is not part of the record herein, Lori K. (mother) was awarded custody of her daughter, Chantal S. Defendant Randall S. (father) was granted visitation. Thereafter, Chantal was adjudged a dependent child of the juvenile court under Welfare and Institutions Code section 300, subdivisions (b) and (c) (all statutory references are to this code unless otherwise indicated), based on findings that, inter alia, father was violent and mother was unable to protect Chantal, leaving the child at substantial risk of suffering emotional damage. Shortly after the dependency finding, father was sentenced to three years in prison on charges not directly related to the allegations underlying this matter. The juvenile court ordered counseling for Chantal.

At a subsequent review hearing, the social worker assigned to the case recommended the dependency be terminated, and mother be granted sole

legal and physical custody, on the ground that mother had successfully complied with the "service plan" devised for her by the department of social services, and Chantal was no longer in need of the court's protection. Father, still incarcerated at the time, objected to termination of the juvenile court's jurisdiction.

During a contested hearing on the termination recommendation, the juvenile court repeatedly asserted its intention to "make appropriate family law orders" that would place conditions on father's right to visitation. The court granted legal and physical custody of Chantal to mother, and announced it would terminate dependency after counsel for Chantal prepared a "family law order" containing specific conditions of visitation.

The order that was subsequently submitted to, and signed by, the juvenile court reiterated that physical and legal custody was granted to mother, mandated that mother keep Chantal in counseling as recommended by Chantal's therapist, and provided: "Dependency is ordered terminated upon filing of [this] formal order in the appropriate family law court."

The order placed conditions on father's visitation rights as follows: "Visitation . . . for father . . . to be facilitated by [Chantal's] therapist, Diane Childs. [¶] Before visitation with father and his daughter can occur, father must be: [¶] 1. In psychotherapy with a therapist qualified to work with issues such as [father]'s. [¶] 2. Father must attend therapy regularly and make satisfactory progress for a time before any visits as determined by his therapist. [¶] 3. At the time that visits are scheduled to begin, [father] must sign a release of information to Ms. Childs to obtain information from his therapist regarding progress in therapy and to allow Ms. Childs to relay issues she sees during visits that are of a concern for her. [¶] 4. Father will be financially responsible for these visits. Payment to be at the beginning of all visits. [¶] 5. Visits will be in Ms. Child[s'] office; Familiar surroundings for Chantal."

The order was filed under a superior court family law case number, and the dependency proceeding was dismissed. Father appealed from the custody order, claiming it improperly required him to submit to counseling as a condition of visitation, and unlawfully delegated judicial authority to therapists. The Court of Appeal rejected both assertions, and affirmed the order.

### III. ANALYSIS

A. *Authority of the Juvenile Court, on Termination of Dependency Jurisdiction, to Require Counseling as a Condition of Custody or Visitation*

 Section 362.4 states: "When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the

juvenile court . . . , the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." The section further provides that on termination of dependency, an order determining visitation with the child "shall be filed in the [existing family law proceeding], at the time the juvenile court terminates its jurisdiction over the minor, and shall become a part thereof. [¶] If no action is filed or pending relating to the custody of the minor in the superior court of any county, the juvenile court order may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides." (*Ibid.*) As explained in *Roger S.*, *supra*, 4 Cal.App.4th 25, 30, "When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court."

Section 362, subdivision (c) (section 362(c)), provides: "The juvenile court may direct any and all reasonable orders to the parents . . . of the minor who is the subject of any proceedings under this chapter . . . . Such an order may include a direction to participate in a counseling . . . program . . . . The program in which a parent . . . is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300."

The court in *Katherine M.*, *supra*, 27 Cal.App.4th 91, held these sections did not authorize a juvenile court, on termination of dependency jurisdiction, to require a parent to submit to counseling as a condition of custody. The court found section 362.4 inapplicable because, it reasoned, that section permits only orders "determining custody of or visitation with" a minor, and it does not permit orders placing conditions on custody or visitation. (*Katherine M.*, *supra*, 27 Cal.App.4th at p. 97, citing *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1503 [285 Cal.Rptr. 374] [section 362.4 does not authorize orders "relating to" custody or visitation] (*Sarah M.*).) The Court of Appeal below disagreed, concluding that section 362.4 implicitly allows such orders: "[It is] inconceivable that the statute, which authorizes a court to make orders touching upon custody and visitation, would not also inherently authorize collateral orders reasonably and necessarily related to custody and visitation. [¶] In the present case the minor was in therapy and refused to see her father. The court knew that father had problems with alcohol abuse [and] domestic violence . . . . In order to work toward supervised visitation between the minor and father, the court conditioned its visitation order on the father being involved in a program of therapy. The therapy is a necessary condition precedent to visitation taking place, and as such, the order for therapy is inextricably bound up with the visitation order.

In our view section 362.4[, by] authorizing the court to make custody and visitation orders[,] implicitly authorizes the court to make collateral orders, such as counseling orders, that are reasonably related to the custody and visitation orders." We agree.

Nor do we find section 362(c), which generally authorizes juvenile courts to issue counseling orders, inapplicable when a juvenile court terminates dependency jurisdiction. *Katherine M., supra,* 27 Cal.App.4th 91, 97, found section 362(c) inapposite because the statute provides that the counseling program must be "designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300." The *Katherine M.* court apparently reasoned that when a juvenile court decides to terminate dependency jurisdiction, it necessarily finds that the "conditions that led to" the dependency order no longer exist. Accordingly, *Katherine M.* reasoned, section 362(c)'s proviso renders it inapplicable to juvenile court orders issued on termination of dependency jurisdiction.

We do not view section 362(c)'s proviso as inconsistent with an order, issued on termination of dependency jurisdiction, requiring counseling as a condition of visitation. The juvenile court's determination, that continuation of dependency was at that time unnecessary for Chantal's protection, was in turn premised on the existence of the court's custody and visitation order. The juvenile court did not find that Chantal would not need protection if father had unconditional visitation rights or joint legal or physical custody. To the contrary, the juvenile court's order reveals clear continuing concerns about father's effect, even in supervised visits, on Chantal's well being. (Cf. *Jennifer R., supra,* 14 Cal.App.4th 704, 712-713.)

Under father's reasoning, in order to impose counseling conditions on his visitation rights, the juvenile court would be required to force Chantal and her mother to remain indefinitely in the juvenile court dependency system. As the present case illustrates, however, there are situations in which a juvenile court may reasonably determine that continued supervision of the minor as a dependent child is not necessary for the child's protection, and at the same time conclude that conditions on visitation are necessary to minimize, if not eliminate, the danger that visits might subject the minor to the same risk of physical abuse or emotional harm that previously led to the dependency adjudication. In such a situation, sections 362.4 and 362(c) authorize the juvenile court to issue an appropriate protective order conditioning custody or visitation on a parent's participation in a counseling program. To the extent *Katherine M., supra,* 27 Cal.App.4th 91, and *Sarah M., supra,* 233 Cal.App.3d 1486, are contrary, they are disapproved.

This brings us to the question of the propriety of the order issued here. Father asserts the order is improper because it leaves the counseling term

open ended, in violation of Family Code section 3190, and constitutes an unlawful delegation of judicial power to therapists. In both respects, he maintains, the order violates his due process rights. We address these claims in turn.

B. *Application of Family Code Section 3190 to Juvenile Court Orders*

Family Code section 3190, subdivision (a), permits a family court to "require parents involved in a custody or visitation dispute, and the minor child, to participate in outpatient counseling with a licensed mental health professional . . . for not more than one year . . . if the court finds both of the following: [¶] (1) The dispute between the parents or between a parent and child poses a substantial danger to the best interest of the child. [¶] (2) The counseling is in the best interest of the child. . . ." Subdivision (c) of section 3190 requires that "[t]he court, in its finding, shall set forth reasons why it has found both of the following: [¶] (1) The dispute poses a substantial danger to the best interest of the child and the counseling is in the best interest of the child. [¶] (2) The financial burden created by the court order for counseling does not otherwise jeopardize a party's other financial obligations." Finally, subdivision (d) of section 3190 states the family court shall not order the parties to return to court on the completion of counseling, but that either party may move for an order requiring additional counseling. As father observes, the juvenile court's order in this case was open ended, and the court made no findings, express or implied, in conformity with Family Code section 3190.

The Court of Appeal concluded Family Code section 3190 does not apply to dependency cases, and that the Legislature intended to authorize juvenile courts discretion to fashion counseling orders on termination of dependency without complying with the requirements of that section. As explained below, we agree.

In support of its conclusion, the Court of Appeal relied primarily on *Jennifer R., supra,* 14 Cal.App.4th 704. In that matter, a juvenile court terminated dependency jurisdiction and issued an order granting sole legal and physical custody to the father. The mother asserted that because the juvenile court terminated dependency jurisdiction, and any future proceeding in the matter would occur in the family court and be controlled by family law, the juvenile court was bound to follow former Civil Code section 4600.5, subdivision (a) (now Fam. Code, § 3080), which established a presumption in favor of joint legal custody between parents as being in the best interests of the child when the parents agreed to such an award.

The *Jennifer R.* court concluded that former Civil Code section 4600.5, subdivision (a), did not apply to custody determinations made by a juvenile

court when it terminates dependency proceedings. (*Jennifer R., supra*, 14 Cal.App.4th at p. 712.) *Jennifer R.* first observed that "[d]ependency proceedings in the juvenile court are special proceedings governed by their own rules and statutes," and that nothing in the juvenile law specifies that the presumption of former Civil Code section 4600.5, subdivision (a), applied in dependency proceedings. (14 Cal.App.4th at p. 711.) The court then explained: "The application of [former] Civil Code section 4600.5, subdivision (a)'s presumption that joint custody is in the best interest of the minor is *inconsistent with the purposes of the juvenile court.* Although both the family court and the juvenile court focus on the best interests of the child significant differences exist. In juvenile dependency proceedings the child is involved in the court proceedings because he or she has been abused or neglected. Custody orders are not made until the child has been declared a dependent of the court and in many cases, such as this one, the child has been removed from the parents upon clear and convincing evidence of danger. The issue of parents' ability to protect and care for the child is the central issue. *The presumption of parental fitness that underlies the custody law in the family court just does not apply to dependency cases.* Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions." (*Jennifer R., supra*, 14 Cal.App.4th at p. 712, italics added, fn. omitted.)

We agree with *Jennifer R., supra*, 14 Cal.App.4th 704, that application of a family-law-based joint custody presumption would be inconsistent with the purpose of juvenile court law. As explained in *Roger S., supra*, 4 Cal.App.4th 25, 30-31, "[a]lthough both the family court and the juvenile court focus on the best interests of the child, the juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances." This purpose would obviously be frustrated if a juvenile court, on termination of dependency jurisdiction pursuant to section 362.4, were required to presume that joint legal and physical custody was in the best interest of a minor.

It does not follow, however, that *no* family law statutory provision can *ever* apply in the dependency context. Indeed, the Legislature has expressly provided that specific parts of the Family Code apply to orders issued by the juvenile court. (See, e.g., §§ 304, 362.4, par. 1, incorporating Fam. Code, § 6218 [relating to protective orders].) But as amicus curiae on behalf of plaintiff Riverside County Department of Public Social Services observes, this shows that the Legislature knows how to make the Family Code applicable to the juvenile court when it intends to do so, and suggests that the Legislature's omission to do so with respect to Family Code section 3190

reveals that the Legislature did not intend that section to apply in juvenile court proceedings. (See also *Jennifer R., supra*, 14 Cal.App.4th 704, 711 & fn. 3.)

This inference is strengthened when we consider the history of Family Code section 3190. Its predecessor, former Civil Code section 4608.1, subdivision (a), applied to "any proceeding *under this part* where custody of, or visitation with, a minor child is at issue . . . ." (Italics added.) When Family Code section 3190 was enacted (Stats. 1992, ch. 162, § 10, div. 8, pt. 2, ch. 12), the italicized phrase was omitted. The Law Revision Commission's Report observes: "[T]he reference to proceedings 'under this part,' meaning the former Family Law Act (former Part 5 (commencing with former Section 4000) of Division 4 of the Civil Code), has been omitted as unnecessary. See Section 3021 (application of part) & Comment. . . ." (23 Cal. Law Revision Com. Rep. (Nov. 1993) p. 347.) Family Code section 3021, in turn, specifically lists the proceedings in which the part of the Family Code in which section 3190 is contained applies (e.g., dissolution of marriage, nullity of marriage, legal separation, etc.), but, significantly, fails to include juvenile court proceedings of any kind. This suggests the Legislature intended that Family Code section 3190, like its predecessor, apply to proceedings in the family court, but not in the juvenile court. (Accord, *Katherine M., supra*, 27 Cal.App.4th at pp. 97-98.)

Indeed, the Legislature's intention is made even clearer when we examine the provisions of Family Code section 3190. As noted *ante*, at page 205, that section requires the court to make findings concerning, inter alia, "[t]he dispute between the parents or between a parent and child." In this respect, Family Code section 3190 does not appear to be focused on the typical juvenile dependency scenario, which does not present a parent-child "dispute" but rather, as noted above, a situation in which the parent has abused or substantially neglected a child. This further suggests the Legislature did not intend that Family Code section 3190 apply in juvenile court proceedings.

In any event, we would be especially reluctant to infer legislative intent to apply a part of the Family Code to juvenile court proceedings if the result would be inconsistent with the purpose of juvenile court law. We conclude, however, that application of Family Code section 3190 to juvenile courts would produce results inconsistent with the purpose of juvenile court law.

As explained above and emphasized in *Jennifer R., supra*, 14 Cal.App.4th 704, the purpose of juvenile court proceedings is to protect children who have been seriously abused, neglected or abandoned by their parents. The

family court, by contrast, is designed to provide presumptively fit parents a forum in which to resolve, inter alia, private disputes about custody of and visitation with children. The one-year renewable "term" of counseling authorized by Family Code section 3190, and the other findings required by that section, were designed with the purposes of the family court in mind. It would frustrate the protective and *parens patriae* purposes of the juvenile court, if on termination of dependency jurisdiction, a court that was persuaded that visitation should be allowed, but conditioned on progress in therapy, were permitted to impose that protective condition for only one year.

Consider, for example, the case of a pedophile father. A juvenile court might conclude that dependency jurisdiction could be terminated (on the ground, as here, that the mother had progressed to the point of being able to care for and protect the child on her own), and that visitation with the father should not be denied out of hand (see, e.g., *In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 569 [283 Cal.Rptr. 483] [standard for determining whether visitation may be denied is whether doing so is in the best interest of the child]; cf. *In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 837-838 [269 Cal.Rptr. 624] [under section 361, subdivision (a), standard for determining whether visitation may be denied is whether doing so is necessary for the protection of the child]), but should be restricted, contingent on, inter alia, his continued progress in therapy to deal with his pedophilia. The purposes of the juvenile court law would clearly be frustrated if in such a case the juvenile court were to issue an order under which the protective counseling condition would automatically expire (albeit subject to renewal in the family court) after one year.

Accordingly, we conclude that because the Legislature has not expressly made Family Code section 3190 applicable to juvenile court orders terminating juvenile court dependency jurisdiction, and because the provisions of that section do not appear to have been designed with the juvenile court in mind, and because application of that section would produce results inconsistent with the purpose of juvenile court law, the Legislature must not have intended that Family Code section 3190 apply to juvenile court orders terminating juvenile court dependency jurisdiction.

Father's arguments to the contrary are unpersuasive. First, he observes that under section 362.4, the juvenile court order conditioning his visitation has been filed in the family court, which may eventually place the family court in a position of enforcing a visitation and counseling order that the family court could not itself have legally made under Family Code section 3190. This may be so, but it is of no consequence. Courts are often placed in

the position of enforcing orders of other courts, even though the enforcing court could not have made the order in the first instance, or would not have present authority to issue the precise order. (See, e.g., U.S. Const., art. IV, § 1 ["full faith and credit" clause]; 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 23, p. 68 et seq.) If, as we conclude, the order was one that a juvenile court could properly make on termination of its dependency jurisdiction, the fact that the family court would be precluded from making that same order does not render the order unenforceable in the family court.

Next, father observes that the Legislature enacted the predecessor to Family Code section 3190 in 1989, in response to two Court of Appeal opinions concluding that open-ended counseling orders issued by *family courts* in custody and visitation disputes violated parents' due process rights. (*In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 817-818 [161 Cal.Rptr. 879] [absent legislative authorization for counseling of indefinite duration as a condition of visitation, such order violates parent's "due process rights"] (*Matthews*); *Camacho v. Camacho* (1985) 173 Cal.App.3d 214, 220-221 [218 Cal.Rptr. 810] [same; court also noted "there is nothing in the record to justify" the condition] (*Camacho*); see also *Katherine M.*, *supra*, 27 Cal.App.4th 91, 99-100 [citing legislative history of predecessor to Family Code section 3190].) Having so amended the family law, father suggests, the Legislature could not have intended to allow juvenile court orders that were similarly open ended.

Insofar as father suggests the history of Family Code section 3190 demonstrates that the Legislature could not have intended to allow juvenile courts to order open-ended counseling as a condition of visitation or custody, we disagree. The Legislature might reasonably have concluded that, assuming the protections afforded by Family Code section 3190 are needed to satisfy due process concerns in the context of litigation in the family court, the distinctive features of dependency jurisdiction in the juvenile court render unnecessary the additional safeguards of Family Code section 3190 in the context of juvenile court orders terminating dependency jurisdiction.

First, unlike a parent who appears initially before the family court, when a parent such as father reaches the family court by way of the juvenile court and section 362.4, he brings with him considerable baggage, i.e., a recent court finding that he has inflicted serious physical or emotional harm on his child, or that he poses a substantial risk of serious future physical or emotional injury to his child. (§ 300, subds. (b) & (c).) In many cases, the parent's recent history also includes a finding by clear and convincing evidence that there is "substantial danger to the physical health of the

minor," justifying removal of the minor from parental custody (§ 361, subd. (b)(1)), and repeated findings by a preponderance of the evidence that return of the minor to him "would create a substantial risk of detriment to the physical or emotional well-being of the minor" (§§ 366.21, subds. (e), (f), 366.22, subd. (a)). (See *Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 255 [19 Cal.Rptr.2d 698, 851 P.2d 1307] (*Cynthia D.*).) Second, and again, unlike a parent who appears in the family court, indigent parents who are brought before the juvenile court are afforded counsel throughout the proceedings, including the termination hearing. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307-308 [19 Cal.Rptr.2d 544, 851 P.2d 826] (*Marilyn H.*); § 317.) Third, proceedings in family court are usually handled informally: parents most frequently submit an agreement to the court, and the matter proceeds without a contested hearing (Edwards, *supra*, 27 Santa Clara L.Rev. 201, 207, 227). By contrast, juvenile dependency litigation ensures and facilitates noticed, contested hearings. (*Marilyn H.*, *supra*, 5 Cal.4th 295, 308 [citing the notice provisions of sections 307.4, 308, 311, 316, 335-336, 364-366.23]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 412-413 [15 Cal.Rptr.2d 613].) As a result, parents in juvenile court often have greater opportunity and ability, compared with those in family court, to litigate custody or visitation orders, including related counseling orders. Fourth, in juvenile court proceedings the social services agency has the burden of presenting evidence to support its allegations and requested orders, the necessity for juvenile court jurisdiction and the need for imposition of therapy or other court-ordered programs. (Cf. *Cynthia D.*, *supra*, 5 Cal.4th 242, 255.) Finally, orders such as that at issue here are subject to the right of appeal (§ 395), and unlike family court litigants, indigent parents who appeal from juvenile court final orders have a right to appointed counsel on appeal (see *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1196-1199 [23 Cal.Rptr.2d 878], and authorities cited).

Given these distinguishing features of juvenile court and family court litigation, the Legislature could reasonably have concluded that application of Family Code section 3190 to orders issued on termination of juvenile court dependency jurisdiction was not required in order to satisfy the procedural due process rights of parents such as father.

Contrary to father's suggestions, the Legislature could also reasonably have concluded that application of Family Code section 3190 to juvenile court dependency termination orders is unnecessary to satisfy whatever substantive due process rights may be implicated. Amicus curiae on behalf of plaintiff Riverside County Department of Public Social Services asserts that a parent's substantive due process rights are met when, "before conditioning visitation within a juvenile court custody order on a parent's participation in therapy, . . . the juvenile court . . . find[s] that such therapy is

necessary to address the problems [at issue in the] specific case and to serve the child's best interest. The order then should be tailored as narrowly as possible to respect the parent's rights and yet still protect the child and serve the child's best interest. Such orders, absent stipulation, obviously would have to be based on competent evidence, usually involving expert opinion in the form of either testimony or documentation. As with all juvenile court proceedings, the parent who opposed the recommended order would be entitled to contest it. In doing so the parent's due process rights are met, as is the state's compelling interest in protecting the child." From our review of the record, it is clear that the court hearings and the resulting challenged order meet the conditions described above.

We conclude that a juvenile court order terminating dependency and requiring counseling as a condition of visitation is not governed by Family Code section 3190. If the Legislature disagrees with our assessment, we assume it will act to clarify its intent.

Having determined that, as a matter of statutory construction, Family Code section 3190 does not apply to the juvenile court's custody order, we must address father's contention that the section must apply as a matter of due process. Father's argument consists primarily of citation to *Matthews*, *supra*, 101 Cal.App.3d 811, 817, and *Camacho*, *supra*, 173 Cal.App.3d 214, 221. Under these decisions, father asserts, the order at issue here violates his "due process" rights because "it constitutes a fundamental restriction of his liberty unaccompanied by any procedural safeguards." (Accord, *Katherine M.*, *supra*, 27 Cal.App.4th at pp. 96-100 [finding due process violation when juvenile court counseling order failed to comply with requirements of Family Code section 3190].)

Father's attempt to invoke *Matthews*, *supra*, 101 Cal.App.3d 811, and *Camacho*, *supra*, 173 Cal.App.3d 214, fails because it overlooks the specific factors that led to invalidation of the custody orders involved in those cases. In *Matthews*, *supra*, a dissolution action, the court found "no precedent" for an order that required a parent to undergo counseling for as long as a designated psychologist deemed it necessary. The court reasoned that "[s]uch a significant curtailment of [a parent's] liberty would, at least, require legislative authorization" that "[u]ndoubtedly . . . would provide for procedural safeguards which were not . . . accorded to her." (*Matthews*, *supra*, 101 Cal.App.3d at p. 818.) In *Camacho*, *supra*, an action to establish paternity and determine visitation, the court cited *Matthews* in concluding that when "there is nothing in the record to justify subjection of a party to involuntary psychiatric treatment, an order requiring him to undergo such treatment is a direct violation of his due process rights, as it constitutes a

fundamental restriction of his liberty unaccompanied by any procedural safeguards." (*Camacho, supra*, 173 Cal.App.3d at p. 221.)

As our discussion demonstrates, these decisions invalidated open-ended custody orders because of the absence of adequate procedural protections. As father acknowledges, however, the dependency scheme includes "carefully crafted due process protections . . . that insure that parental rights are protected along with the physical and mental health of children." (See *Cynthia D., supra*, 5 Cal.4th 242.) Father does not claim that he did not receive those protections in this case.[1] Applying the governing procedures, the juvenile court here made the following findings *before* it entered the visitation order: (i) father's alcohol abuse significantly impaired his ability to parent Chantal; (ii) Chantal was at substantial risk of suffering severe emotional damage as revealed by severe anxiety and withdrawal toward her father; and (iii) Chantal had been exposed to domestic violence during visits with her father, placing her at risk of similar abuse. Accordingly, the findings that were absent in *Matthews* and *Camacho* are present in this case.[2]

Given our conclusion that *Matthews, supra*, 101 Cal.App.3d 811, and *Camacho, supra*, 173 Cal.App.3d 214, are thus distinguishable, we reject father's assertion that those decisions bar a juvenile court from making the open-ended counseling order at issue here. Father's contrary conclusion (and that of *Katherine M., supra*, 27 Cal.App. 91) is apparently premised on the belief that termination of dependency necessarily means that "no protection issues remain" and hence "state intervention in the family is no longer justified." As we have explained, *ante*, at page 204, however, this premise is false. Based on its previous findings regarding father's effect on Chantal, the juvenile court was entitled to establish ongoing protections for Chantal as a condition of visitation and termination. To the extent *Katherine M., supra*, 27 Cal.App.4th 91, relied on contrary conclusions to find a due process violation, it is disapproved.

Finally, we reject father's argument that our decision leaves him "with none of the protections afforded by the Family Code and also without the procedural protections created and provided by the dependency court."

---

[1] Moreover, he expressly does *not* contend "that the dependency court had to comply with the procedural provisions of the Family Code when it made its custody and visitation order." "When such an order is made," he asserts, "it is made in the dependency court, and made *pursuant to the rules and procedures of that court.*" Father further concedes that Family Code section 3190 "has no place in juvenile court *during the course* of a juvenile proceeding . . . ." (Original italics.)

[2] In rejecting father's claim, we express no opinion regarding the correctness of *Matthews* and *Camacho*. We simply find that, contrary to father's assertion, they do not compel *invalidation* of the visitation order before us.

Father received the many protections of the juvenile court before entry of the termination and conditional visitation order, during the termination proceeding, and after that proceeding as well (see procedural protections described, *ante,* pp. 209-210). After transfer of the case to family court, the same procedural protections for enforcement and modification applicable to visitation orders originating in family court also apply to father. As noted *ante,* at pages 202-203, section 362.4 expressly contemplates that the family court may modify the juvenile court's visitation order. For all of these reasons, we reject father's due process claim.

C. *Delegation of Judicial Authority*

As noted above, the order specified that visitation was to be "facilitated" by Chantal's therapist, and that visitation was to begin when father's chosen therapist determined father had made "satisfactory progress for a time." Father asserts these aspects of the order constitute an improper delegation of judicial authority to the two therapists.

The Court of Appeal below found the order proper under *In re Moriah T.* (1994) 23 Cal.App.4th 1367 [28 Cal.Rptr.2d 705] (*Moriah T.*), which held a juvenile court may delegate to a county social worker the responsibility to manage details of visitation such as the time, place, and manner thereof, but it may not delegate absolute discretion to determine whether any visitation occurs. (*Id.* at pp. 1374-1376; accord, e.g., *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756-757 [270 Cal.Rptr. 326].) The *Moriah T.* court stressed the limited delegation was to a public entity statutorily bound to act as a cooperative arm of the juvenile court. (23 Cal.App.4th at pp. 1374-1376.) The present case is distinguishable because neither private therapist involved herein is so bound.

Contrary to father's argument, the order does not vest therapists with "absolute" discretion to determine whether visitation should occur. The order gives Chantal's therapist no discretion whatsoever. The directive that Chantal's therapist "facilitate" visitation appears designed merely to mandate that Chantal's therapist cooperate with the court's order that visitation occur once certain conditions are met.

Father correctly observes that the order vests some discretion in a therapist of his choice, to determine when "satisfactory progress" has been made and the ordered visitation may *begin.* The juvenile court apparently concluded that to protect Chantal, visitation should not begin until father makes sufficient progress in his own therapy. A juvenile court faced with this situation has two options. First, if circumstances warrant, it could deny

father visitation, which in effect would require him to later move the family court to amend the order if he wished to secure visitation. In this regard, we note that father does not contest the position of Riverside County Department of Public Social Services, and amicus curiae on its behalf, that on this record the juvenile court would have been within its discretion to simply deny father any visitation.[3] Alternatively, the juvenile court could issue the order it did, specifying that visitation commence in a carefully restricted setting when father's chosen therapist determines that father has progressed satisfactorily.

Even assuming arguendo that the order delegated too much judicial discretion, *father* is not prejudiced thereby. As noted above, father does not contest the position that on this record the juvenile court would have been within its discretion if it simply denied him any visitation. The fact that the juvenile court rejected that course, and instead issued the restrictive order challenged now, amounts to a windfall to father, not a violation of his rights.

If any party stands to be prejudiced by the order, it is not father, but instead mother and/or Chantal—neither of whom contests the order. Even as to those parties, however, it is not apparent that the order here would be improper, because it contemplates that all persons subject thereto would remain under the control of the family court and that any party who wished to contest the conduct of a therapist (or the continued propriety of the order based on changed circumstances) would be able to raise that issue in the family court. Accordingly, if mother or Chantal were dissatisfied with the performance or recommendations of father's therapist, both or either of them would be permitted to raise those claims in the family court, and a family court judge would make the final decision as to whether visitation should begin.

For these reasons, we reject father's "unlawful delegation" challenge to the order.

## IV. CONCLUSION

Sections 362.4 and 362(c) authorize a juvenile court, when terminating its dependency jurisdiction, to issue an order conditioning custody or visitation

---

[3]Riverside County Department of Public Social Services observed in its brief on the merits that based on the evidence, "the court arguably could have suspended all contact between father and minor." Likewise, amicus curiae on its behalf observed that, in practical effect, the court here denied father any visitation at the time of the order, subject to visitation being initiated if and when father progressed in his therapy sufficiently to make closely monitored visitation safe for Chantal. Amicus curiae further asserted that "there is substantial evidence to support the court's denial of visitation under either a best interest or detriment standard [(see *ante*, at p. 212)], and that the trial court's order in this regard was not an abuse of discretion." Father failed to contest either this conclusion, or amicus curiae's characterization, in his reply or answer briefs, or at oral argument.

on a parent's participation in a counseling program. Contrary to father's view, such a counseling order is not governed by Family Code section 3190. The judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., George, J., Werdegar, J., and Chin, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—I generally concur in the judgment. In most respects, the Court of Appeal did not commit error in affirming the juvenile court's order terminating its dependency jurisdiction over the minor, Chantal S., with an order allowing visitation by her father, Randall S., on conditions including commencement of psychotherapy and satisfactory progress therein.

I dissent, however, as to a single matter.

The Court of Appeal committed reversible error in affirming the juvenile court's visitation order insofar as it effectively, *and unlawfully*, delegates judicial authority to individuals outside the government.

A glance at the visitation order, which is set out in the margin,[1] reveals a grant of substantially unfettered discretion to private psychotherapists. Who will determine whether Randall's not-yet-retained psychotherapist—whoever he may be—is a "therapist qualified to work with issues such as" his? Indeed, who will determine what "issues such as his" are? The answers are not clear. Presumably, however, the not-yet-retained psychotherapist will himself decide. Next, who will determine whether Randall has "attend[ed] therapy regularly and ma[d]e satisfactory progress for a time" with his not-yet-retained psychotherapist? Also, who will determine what "time" is sufficient? The answers here *are* clear. But no better. The not-yet-retained psychotherapist will himself decide.

That the juvenile court "would have been within its discretion to simply deny [Randall] any visitation" at all (maj. opn., *ante*, at p. 214) does *not*

---

[1]"Visitation order for father, Randy [S.] to be facilitated by the minor's therapist, Diane Childs.

"Before visitation with father and his daughter can occur, father must be:

"1. In psychotherapy with a therapist qualified to work with issues such as Mr. [S.]'s.

"2. Father must attend therapy regularly and make satisfactory progress for a time before any visits as determined by his therapist.

"3. At the time that visits are scheduled to begin, Mr. [S.] must sign a release of information to Ms. Childs to obtain information from his therapist regarding progress in therapy and to allow Ms. Childs to relay issues she sees during visits that are of a concern for her.

"4. Father will be financially responsible for these visits. Payment to be at the beginning of all visits.

"5. Visits will be in Ms. Child's [*sic*] office; Familiar [*sic*] surroundings for Chantal."

mean that it could properly have allowed visitation through an unlawful delegation of judicial authority—say, to Chantal herself or to a committee of her playmates. The authority to deny lawfully does not entail a power to grant unlawfully.

Moreover, that the visitation order "contemplates that all persons subject thereto would remain under the control of the family court and that any party who wished to contest the conduct of a therapist (or the continued propriety of the order based on changed circumstances) would be able to raise that issue in the family court" (maj. opn., *ante*, at p. 214) does *not* mean that it does not effect an unlawful delegation of judicial authority to individuals outside the government. It may not make a delegation that is *irrevocable*. But it does make one that is *unlawful*.