Filed 6/30/15  In re M.N. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.N.-H., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> C.N., <br><br>     Defendant and Appellant. | A143089 <br><br> (Humboldt County <br>  Super. Ct. No. JV 140082) |

In this juvenile dependency proceeding, C.N., mother of eight-year old M.N.-H.[1], appeals from dispositional findings and orders, filed on September 17, 2014, in which the juvenile court (1) terminated this juvenile dependency proceeding, and (2) issued Family Law custody orders that awarded sole legal and physical custody of M.N.-H. to R.H., the child's presumed father, and granted C.N. supervised visits.[2]  C.N. contends she is entitled to a reversal and a remand to begin this proceeding anew because the juvenile

---

[1]     The child uses a hyphenated last name consisting of the surnames of mother and father.

[2]     We deem C.N.'s notice of appeal filed on September 15, 2014 to be a premature notice of appeal from the dispositional findings and orders filed on September 17, 2014. (Cal. Rules of Court, rule 8.104(d)(2), (e).)

1

court failed to appoint sua sponte a guardian ad litem for her at the dispositional hearing. We see no merit to C.N.'s contention, and accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

On May 29, 2014,[4] respondent Humboldt County Department of Health & Human Services (the agency) removed M.N.-H. (the child) from the home of C.N. (mother) and placed the child with R.H., the child's then alleged and biological father. The removal was based, in pertinent part, on reports of mother's ongoing and unaddressed mental health concerns that affected her ability to safely parent both the child and the child's older half-sibling L.H.[5] On June 2, the agency filed a Welfare and Institutions Code[6] section 300 petition, alleging that the juvenile court should find that the child comes within the court's jurisdiction under subdivisions (a) (serious physical harm), (b) (failure to protect), and (c) (serious emotional damage). (§ 300, subds. (a), (b), (c).)

At the detention hearing on June 3, mother was present and the court granted mother's request for appointed counsel then present in court. Mother's counsel acknowledged receipt of the agency's petition and report, waived further "instruction and arraignment," entered a denial on behalf of mother, submitted on the petition, and requested a jurisdictional hearing with a time waiver. The court found the child had been removed from mother's home, that continuance in that home would be contrary to the child's welfare and there was a need for continued detention, that reasonable efforts had been made to prevent or limit the need for removal, and that the agency had made a prima

---

[3]     We set forth only those facts necessary to resolve this appeal concerning the juvenile dependency proceeding relative to the child M.N.-H.

[4]     All further unspecified dates refer to 2014.

[5]     The agency removed L.H. from mother's care, placed that child in the custody of that child's presumed father V.H., and commenced a separate juvenile dependency proceeding relating to L.H. The juvenile dependency proceeding relating to L.H. similarly terminated with the issuance of Family Law custody orders that awarded V.H. sole legal and physical custody of L.H. and granted mother supervised visits subject to L.H.'s consent.

[6]     All further unspecified statutory references are to the Welfare and Institutions Code.

facie showing that the child was described by section 300. Pending the jurisdictional hearing, the court directed the agency to offer mother the following reunification services: parent education program, anger management counseling at MEND/WEND or Humboldt County Mental Health, a psychiatric evaluation through Humboldt County Mental Health, and a psychological evaluation by Dr. Renouf. The status of the child's father was elevated to presumed father and he was granted physical custody of the child. Based on the parties' agreement, the court granted mother visitation, beginning with supervised telephone calls and followed by visits with the child in a therapeutic setting to be arranged by the agency. The court scheduled a jurisdictional hearing for June 30.

At a June 19 hearing, mother was present with her counsel. The court noted it had received the agency's jurisdictional report on June 17. The agency's counsel informed the court that the parties had reached "a resolution of the matter." The parties asked the court to vacate the date scheduled for the jurisdictional hearing, and permit the parents to submit to the court's jurisdiction based on an amended petition containing a single allegation. Mother's counsel indicated that mother had not had an opportunity to execute a "waiver of rights" form, and consequently, the hearing was recessed to allow mother and her counsel to complete the form. Following the recess, the court confirmed with mother's counsel that mother had executed a written waiver of rights form, which was accepted, approved, and filed by the court.[7] Then, the court, by clear and convincing evidence, sustained the amended petition, pursuant to section 300, subdivision (b), which

_____

[7] The written waiver of rights form indicated that the petition had been read to mother and she understood it, and that she wanted to "submit the petition on the basis of the social worker's or probation officer's report and other documents, if any." By initialing form boxes, mother acknowledged she understood she was giving up certain rights allowed at a trial or hearing. Mother also acknowledged, in pertinent part, that she understood that if she submitted the petition on the report, the court would probably find the petition was true and if the petition was found true and the child declared a dependent of the court, the court might assume custody of the child, and under certain circumstances, it was possible that no reunification services would be offered or provided to her. The form contained an executed "declaration of attorney," in which it was declared that counsel had explained and discussed with mother "the rights and consequences of . . . submitting the petition on the report."

3

alleged as follows: "The mother has ongoing and unresolved mental health issues that affect her ability to safely parent the children, including threatening to kill the children's pets, and waking the children in the middle of the night and making them pack their belongings and leave their home. On or about May 29, 2014, the mother was escorted to the Psychiatric Emergency Services unit at Sempervirens Psychiatric Hospital by the Humboldt County Sheriff. The mother's unresolved mental health issues continue to place the children at risk of physical and emotional harm." On July 31, the date initially scheduled for the dispositional hearing, mother's counsel requested that the court reschedule the matter for a contested hearing. The court agreed, and ultimately the matter was scheduled for a dispositional hearing on September 15.

Before the dispositional hearing, the agency submitted a report received by the court on July 29, recommending termination of the dependency proceeding without a provision for reunification services for mother, and the issuance of Family Law custody orders granting sole legal and physical custody to father and granting mother supervised visits. The agency informed the court of the family's current circumstances. The agency social worker stated that the child's placement with father appeared to suit the child well and met the child's needs, and father had shown the ability to safely parent the child without court supervision allowing for termination of the dependency proceeding. Father stated that continued placement of the child with him met the child's needs for safety and stability. Mother reported that she had a deep and abiding love for the child, and, was committed to doing whatever she needed to do to repair her relationship with the child and regain custody. She had been taking Love and Logic parenting classes, had engaged in a mental health assessment and undergone a psychological evaluation, and, had begun taking anti-depressant medication. The agency received a report from Dr. Renouf, who had conducted mother's psychological evaluation. He reported that mother's unaddressed mental health problems were a major risk factor for emotional abuse of the child, and mother should not have unsupervised visits with the child until mother's mental health was stabilized. As to visitation, the agency reported that the child had had telephone conversations with mother, but the agency had not yet arranged for in person

4

visits between mother and child. The eight-year-old child expressed hesitation about the idea of in person visits with mother and wanted another adult present during the visits. In the report's concluding assessment/evaluation, the agency social worker stated: Mother "has a long history of mental health issues that have prevented her from safely parenting [the child]. Until very recently, she maintained that she has no mental health issues, and was unwilling to take steps to address the mental health concerns. She has just begun to engage in services, and continues to make statements that she is not entirely certain she really needs to, although she states that she will in order to have her [child] back in her care. Her recovery has just begun. [¶] Meanwhile, [the child] has a non-offending father who has demonstrated that he can provide for [the child's] needs. [The child] is currently in his care and by all reports, including [the child's] own, [the child] is far happier than [the child] was when living with . . . mother's untreated mental health issues. [¶] The Department respects [mother's] willingness to reconsider her previous denials that mental health problems might exist, and wishes her well in her recovery. [¶] The Department believes that further involvement in this case is unwarranted, given the appropriateness, availability, and willingness of [father] to parent [the child]. . . . [¶] [Mother] has been made aware that when she feels she has achieved enough change to warrant the Court's reconsideration, she can always request that the matter of custody be reconsidered in Family Law Court. [¶] The [child's Indian tribe] is in agreement with" the agency's recommendations.

Mother's counsel filed an "issue statement" opposing the agency's dispositional recommendation. Specifically, mother complained that supervised telephone calls with the child had been "sporadic at best," and the agency failed to arrange any supervised therapeutic visits between mother and the child. Mother also requested mediation. Minimally, mother wanted more in person and telephonic visits. Lastly, mother noted that at the upcoming dispositional hearing, she would object to the proposed admission into evidence of Dr. Renouf's psychological assessment because the doctor's report did not actually diagnosis mother but simply guessed at what might be her diagnosis.

5

In its "at-issue memorandum" filed on August 29, the agency noted that at the upcoming dispositional hearing it intended to call as a witness Dr. Renouf regarding his assessment of mother. The agency refused to stipulate to the receipt of some psychological/psychiatric records as offered by mother and asked permission to cross-examine the preparer of any of those records. The agency further requested that the court terminate its jurisdiction and issue Family Law custody orders, pursuant to section 361.2, subdivisions (a), (b)(1), as the child had been safely placed with father and the child wanted to remain with father and did not wish to reunify with mother.

At the September 15 dispositional hearing, mother's counsel stated on the record that she was appearing for mother and mother was present in the courtroom. The agency's counsel informed the court that the parties had reached a resolution as to disposition. The court was asked to terminate the juvenile dependency proceeding and issue Family Law custody orders granting father sole legal and physical custody of the child and granting mother supervised visits with the child at least two times per month, for a "minimum" of "two hours." The parties also asked the court to incorporate in its Family Law custody orders or that the orders otherwise reflect the following directives, at mother's request: (1) the specific names of the proposed visit supervisors, and that if the visit supervisors did not work out, mother could obtain a professional monitor; (2) mother would receive copies of the child's report cards and could request separate parent/teacher conferences at the school; (3) mother would have telephone calls on a weekly basis when she did not have visits; and (4) the child shall reside with father in the county for at least the next six months. The court asked if anyone had any comment or disagreed with the stated resolution, and then stated it heard no objections.[8] The court adopted the findings and orders as agreed by the parties and stated in open court and issued written findings and orders filed on September 17. Mother's timely appeal ensued.

---

[8] The court granted mother's request to seal the agency's first addendum report received by the court on July 29, in which the agency had attached mother's psychological evaluation. The sealed record has not been submitted to this court, and neither the agency nor mother's appellate counsel has requested that the sealed record be submitted for our consideration.

## DISCUSSION

Mother's sole contention on this appeal is that the juvenile court committed prejudicial error by failing to appoint sua sponte a guardian ad litem (GAL) for her at the dispositional hearing. According to mother, the record demonstrates that a GAL appointment was required because her mental health prevented her from understanding the nature and purpose of the proceeding or assisting her counsel in a rational manner. She then argues that the failure to appoint a GAL violated her right to due process and she was prejudiced by the violation because at the dispositional hearing she entered into a custody and visitation agreement without a determination by the court that she was capable of understanding the nature of that agreement. As we now discuss, we conclude mother's contentions are without merit.

"Code of Civil Procedure section 372 provides, in relevant part, 'A guardian ad litem may be appointed in any case when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to appoint a guardian ad litem to represent the . . . incompetent person . . . .' Code of Civil Procedure section 373 further provides, 'When a guardian is appointed, he or she shall be appointed as follows: [¶] . . . [¶] (c) If an . . . incompetent person is a party to an action or proceeding, upon the application of a relative or friend of such . . . incompetent person, or of any other party to the action or proceeding, or by the court on its own motion.' " (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1367 (*Ronell A*.).) "Although these provisions permit the appointment of a guardian ad litem for a party who already has a general guardian of his estate, they do not require any prior independent adjudication of incompetency. (See *Dunphy v. Dunphy* (1911) 161 Cal. 380, 382, 389 [119 P. 512].) Incompetency may exist independently of any judicial determination thereof. (*Olivera v. Grace* (1942) 19 Cal.2d 570, 577 [122 P.2d 564, 140 A.L.R. 1328].)" (*Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 12.) Thus, when a juvenile court *already* has knowledge of a parent's incompetence, at a minimum, it has an obligation to make an inquiry sufficient to determine that the parent is, or is not, competent. (*In re Sara D.* (2001) 87 Cal.App.4th 661, 672 (*Sara D.*); see *In re Lisa M*. (1986) 177 Cal.App.3d 915, 919 (*Lisa M*.).)

7

However, "[w]hen the evidence casting doubt on [a parent's] present competence is less than substantial, . . . [i]t is within the discretion of the trial judge whether to order a competence hearing. When the trial court's declaration of doubt is discretionary, it is clear that 'more is required to raise a doubt than mere bizarre actions (*People v. Kroeger* (1964) 61 Cal.2d 236, 243-244 . . . ) or bizarre statements (*People v. Williams* (1965) 235 Cal.App.2d 389, 398 . . . ) . . . or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to [the parent's] ability to assist in his own defense.' " (*People v. Welch* (1999) 20 Cal.4th 701, 742.)

In *In re R.S.* (1985) 167 Cal.App.3d 946 (*R.S.*), the Fifth District Court of Appeal addressed the "minimum standard of competency that triggers the necessity of appointment of a guardian ad litem." (*Id.* at p. 978.) The court acknowledged that there was "necessarily a certain amount of tension between the interests of a parent in contesting [a juvenile dependency] proceeding . . . and the interest of that same parent in meaningful participation in the judicial proceeding. Both of these interests, depend, to a greater or lesser extent, upon the parent's mental abilities and capacities. To the extent a parent contests [a juvenile dependency proceeding], he necessarily contends that any mental disease or deficiency from which he suffers does not render him incompetent to support and control his minor child. Such a parent may be reluctant, as may his attorney, to assert in the same proceeding that the parent is mentally incompetent to personally participate in the judicial proceedings and requires the appointment of a guardian ad litem to protect his interests. Under these circumstances, we must rely upon trial counsel, acting in the best interest of his client, and upon the court itself, acting to preserve the integrity of the judicial proceedings, to assure that no person incompetent or otherwise incapable of understanding the proceedings against him be forced to participate in a proceeding at which significant rights are at stake." (*Id.* at pp. 978-979.) The *R.S.* court then went on to hold that there was no merit to contentions in that case that the juvenile court erred in failing to appoint a GAL for the mother or that counsel was ineffective for failing to request an examination of the mother's competency. (*Id.* at p. 979.) The court

8

explained, "Notwithstanding [the mother's] documented mild mental retardation and her dependent personality disorder, the record here establishes that [the mother] did understand the nature of the proceedings against her and was able to meaningfully participate in those proceedings and to cooperate with her trial counsel in representing her interest." (*Id.* at pp. 979-980.)

In *Sara D*., *supra*, 87 Cal.App.4th 661, which concerned the opposite situation from our case, the Fifth District Court of Appeal found that the juvenile court had committed error by appointing a GAL for the child's mother Taylor. (*Id*. at pp. 663-664, 672.) In making the GAL appointment, the juvenile court relied, in pertinent part, on counsel's statements that he was having difficulty communicating with Taylor, and, believed that she was confused about the proceedings and either did not appreciate or understand the concepts and issues to be presented to the court. (*Id.* at pp. 664, 673, 674.) In finding that the juvenile court's GAL appointment was not supported by sufficient evidence of Taylor's incompetence, the appellate court explained: "The [juvenile] court relied on the conclusionary statements of Taylor's counsel without determining the factual basis or foundation for his conclusions. [(See *In re Dolly D*. (1995) 41 Cal.App.4th 440, 447 [conclusionary statements insufficient to support determination of jurisdiction].)] The court did not know what steps, if any, [counsel] had taken to try to resolve Taylor's confusion or explain the procedures or issues she did not understand. The court did not know why or how Taylor could not assist [counsel] in protecting her interests. [¶] [The Social Services Department (Department)] argues the court considered not only the statements of Taylor's counsel but also the social studies prepared by the Department. Initially we note that while social studies are admissible on the question of jurisdiction [(§ 355; *In re Malinda S*. (1990) 51 Cal.3d 368, 382)], we question whether these documents, which contain multiple hearsay, are admissible to determine whether an adult is competent. Moreover, the social study naturally focused on the significant problems Taylor had in raising [the child], which, while important to the questions of jurisdiction, have little relevance on the issue of Taylor's competency. [¶] Assuming that the social studies were properly considered by the court, they

essentially confirmed testimony that Taylor had psychological problems (major depression [mild recurrent], posttraumatic stress disorder with chemical dependency in remission, and borderline personality disorder) and that Taylor had fragmented thoughts which made it difficult for her to stay focused. At times, Taylor would have chaotic relationships with both children and adults. None of this evidence, however, supports a conclusion that Taylor did not understand the nature of the proceedings or was unable to assist counsel in protecting her interests." (*Sara D., supra*, at p. 674, fns. omitted.)

In our view, the above-described cases support our rejection of mother's argument that her right to due process was violated by the juvenile court's failure to appoint sua sponte a GAL for her at the dispositional hearing. Mother asserts the juvenile court "was aware of" and should have inquired about her competency based on its consideration of the agency's detention and jurisdictional reports, which detailed "a history of mental illness and erratic behavior" by mother. However, although the agency's reports were "admissible" on the issues of detention and jurisdiction, "we question whether these documents, which contain multiple hearsay, are admissible to determine whether an adult is competent. Moreover, [the agency's reports] naturally focused on the significant problems [mother] had in raising [the child], which, while important to the questions of [detention and] jurisdiction, have little relevance on the issue of [mother's] competency." (*Sara D., supra*, 87 Cal.App.4th at p. 674.) Even assuming the agency's reports "were properly considered by the court," they essentially recited numerous incidents of mother's "erratic" behavior and "dysfunctional parenting," and noted that mother had a "long history of mental health issues," including several hospitalizations. "None of this evidence, however, supports a conclusion that [mother] did not understand the nature of the proceedings or was unable to assist counsel in protecting her interests." (*Id.* at p. 674; see *Ronell A., supra,* 44 Cal.App.4th at pp. 1367-1368.) Mother points to nothing in the agency reports, and we have not found anything, that demonstrates she was confused about the nature of the proceedings against her or that she could not assist her counsel in protecting her interests. Nor have we found anything in the reporter's transcripts of the hearings that calls into question the juvenile court's acceptance of the parties' custody

and visitation agreement or required the court to inquire into mother's competence. Rather, the record demonstrates the parties' ultimate custody and visitation agreement was the result of careful and serious consideration of mother's requests regarding visitation and participation in the child's education to help mother repair her relationship with the child.[9]

Mother's claim of prejudice is not persuasive. According to mother, the juvenile court's failure to appoint sua sponte a GAL "negatively infected the outcome of the proceedings to [her] detriment." Specifically she argues that by agreeing to the custody and visitation orders, without the benefit of a GAL, she "gave away the chance to request" reunification services, which was an option if the court had determined that father should assume custody subject to the supervision of the juvenile court. However, as we now explain, neither the statutory scheme nor the record supports mother's arguments.

---

[9] The cases relied on by mother do not persuade us that she required the assistance of a GAL before she entered into an agreement regarding the child's custody and visitation. For example, In *In re Daniel S.* (2004) 115 Cal.App.4th 903, Division One of the Court of Appeal, Fourth Appellate District upheld the juvenile court's sua sponte appointment of a GAL for the child's mother, Leticia, based on the following evidence: "At the time of the jurisdictional and dispositional hearing, Leticia was unable to 'process anything.' She was agitated, angry, aggressive, and unstable, despite being on medication. She was in intensive care and was not allowed to attend the jurisdictional and dispositional hearing because she was 'too much of a risk.' She was unable to comprehend what the social worker was telling her during a telephone call one month before the hearing. This call occurred five days before the court appointed the guardian ad litem." (*Id.* at p. 913.) In *In re Christina B.* (1993) 19 Cal.App.4th 1441, Division One of the Court of Appeal, Fourth Appellate District upheld the juvenile court's appointment of a GAL, over the mother's objection, where there was evidence demonstrating the mother's "inability to differentiate the dependency case from the larger conspiracy she believed was being conducted against her," and "[t]he record [was] replete" with examples of [the mother's] rambling and failure to focus on the matter at hand," including testimony from the mother's counsel. (*Id.* at p. 1451.) In *Lisa M., supra,* 177 Cal.App.3d 915, Division One of this court found that once the juvenile court made a specific finding that the child's mother was not competent to understand the nature of the proceedings, the juvenile court had a sua sponte duty to appoint a GAL. (*Id.* at p. 919.)

11

At issue here is section 361.2, which governs "the child's temporary placement with the noncustodial parent and the provision of reunification services to the parents, and also permits the court to grant legal and physical custody of the child to the noncustodial parent. (§ 361.2, subds. (a), (b); see *R.S. v. Superior Court* [(2007)] 154 Cal.App.4th [1262,] 1270." (*In re V.F.* (2007) 157 Cal.App.4th 962, 969 (*V.F.*).) "If a noncustodial parent requests custody of a child, the trial court must determine whether placement with that parent would be detrimental to the child. (§ 361.2, subd. (a).) . . . In the absence of a finding of detriment, the court must place the child with the noncustodial parent. (§ 361.2, subd. (a).)" (*V.F., supra*, at p. 970.) "The court 'may' at that point retain jurisdiction and order reunification services for the parent from whom the child was removed, or it 'may' order the former noncustodial parent to become the legal and physical custodian of the child and terminate jurisdiction over the child. (§ 361.2, subd. (b)(1) & (3).)" (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 594, fn. 4 (*Ryan K.*); see *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1243 (*Karla C.*); *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 55.) "Under section 362.4, the juvenile court may, when it terminates jurisdiction over a case, issue an order 'determining the custody of, or visitation with, the child.' The juvenile court's section 362.4 order may be enforced or modified by the family court. (§ 362.4; *In re Chantal S.* (1996) 13 Cal.4th 196, 208-209 [51 Cal. Rptr. 2d 866, 913 P.2d 1075]; *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358 [87 Cal. Rptr. 3d 715].) Custody and visitation orders issued under section 362.4 are sometimes referred to as 'family law' orders or 'exit' orders. (See *In re Chantal S., supra*, at p. 202; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300 [55 Cal. Rptr. 3d 647].)" (*Ryan K., supra*, 207 Cal.App.4th at p. 594, fn. 5.)

"When deciding whether to terminate jurisdiction [under section 361.2], the court must determine whether there is a need for continued supervision, not whether the conditions that justified taking jurisdiction in the first place still exist . . . ." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1451 (*Janee W.*), citing to *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1493-1494, 1496-1498 (*Sarah M.*), disapproved on other grounds by *In re Chantal S., supra,* 13 Cal.4th at p. 204, and § 366.21, subd. (e) [at six-month review

12

hearing, if child was placed with noncustodial parent under section 361.2, the court shall determine whether continued supervision is still necessary and may terminate jurisdiction under that section].) "In *Sarah M*., the [Fifth District Court of Appeal] affirmed an order terminating dependency court jurisdiction after a child was taken from her mother and placed with her father. The mother claimed continuing supervision was required because there were visitation problems that caused the child to suffer emotional distress, and because the mother was concerned who would pay for conjoint therapy if it were ordered. The appellate court rejected that argument, saying it was 'not a cry for continued supervision, but rather a plea for financial aid.' (*Sarah M., supra*, at pp. 1498, 1500.) The court noted that by the time of the final hearing, when jurisdiction was terminated, it was undisputed that the child was doing fine. Because the [child] "was no longer at risk as of [that hearing], she no longer needed the protection of the juvenile court. [Citation.]' (*Id.* at pp. 1499-1500.)" (*Janee W., supra*, 140 Cal.App.4th at p. 1452.)

Additionally, as noted, "when a court places a dependent child with the noncustodial parent pursuant to section 361.2, it has discretion, but is not required, to order reunification services to the formerly custodial parent. (See § 361.2, subd. (b)*; In re Gabriel L.* (2009) 172 Cal.App.4th 644, 651 [91 Cal.Rptr.3d 193]; *In re Erika W.* (1994) 28 Cal.App.4th 470, 475-478 [33 Cal.Rptr.2d 548] (*Erika W.*).)" (*Karla C., supra,* 186 Cal.App.4th at p. 1244.) " 'If the previously noncustodial parent can provide a safe and stable permanent home for the child and the evidence establishes that the other parent cannot, reunification services may be offered only to the previously noncustodial parent since this serves the Legislature's goals by placing the child in parental custody and providing for a safe and stable permanent home for the child. . . . [¶] If, on the other hand, the previously noncustodial parent who is now assuming custody does not appear to be an appropriate permanent placement for the child, and the previously custodial parent has the potential to provide a safe stable permanent home for the child, reunification services can be offered to the previously custodial parent in the hope that this parent will remedy his or her deficiencies and reunify with the child. . . . [¶] . . . [¶] . . . "[T]he purpose of reunification services is to facilitate the return of a dependent child

13

to parental custody." [Citations.] . . . When a child is placed in nonparental custody, reunification services are necessary to promote a possible return of the child to parental custody. However, when a child is placed in parental custody, this goal has already been met and therefore reunification services are not necessary.' (*Erika W., supra,* 28 Cal.App.4th at pp. 476-478, italics omitted.)" (*Karla C., supra,* 186 Cal.App.4th at p. 1244; see *Janee W., supra* 140 Cal.App.4th at p 1451.)

Mother makes no claim that had the juvenile court appointed her a GAL a credible argument could have been made at the dispositional hearing challenging father's request for exit orders granting him sole legal and physical custody of the child without continuing court supervision, granting mother visitation rights, and terminating the court's jurisdiction. To the contrary, once the court found that the child could safely live with father without further court supervision, it is highly unlikely the juvenile court would have continued its jurisdiction so that mother could receive reunification services. Although not dispositive, we further note that the juvenile court's "termination of jurisdiction . . . actually eliminate[d] the risk of termination of [m]other's parental rights." (*Karla C., supra*, 186 Cal.App.4th at p. 1267, fn. 21, citing to *Sarah M., supra*, 223 Cal.App.3d at p. 1491.)

In sum, we conclude mother's claim of error does not require reversal as she has not shown that the juvenile court's failure to appoint sua sponte a GAL resulted in a violation of her right to due process or a miscarriage of justice. Even assuming the juvenile court should have made an inquiry relative to mother's competence, we would conclude that any purported error was harmless. "[B]ecause the failure to appoint a guardian ad litem is a mere irregularity," we will not reverse based on such an error, where, as in this case, mother has not demonstrated that the appointment of a GAL "would likely have resulted in a different outcome." (*Lisa M., supra*, 177 Cal.App.3d at p. 920, fn. 4; see, also, *In re James F*. (2008) 42 Cal.4th 901, 904-905, 911 & fn. 1 [erroneous appointment of GAL for a parent in juvenile dependency proceeding may be

14

harmless, albeit the Supreme Court did not address whether the standard is "harmless by clear and convincing evidence rather than harmless beyond a reasonable doubt"].) [10]

**DISPOSITION**

The dispositional findings and orders filed on September 17, 2014, are affirmed.

_____

Jenkins, J.

We concur:

_____

Pollak, Acting P. J.

_____

Siggins, J.

---

[10] In a separate section of her opening brief, mother anticipated that the agency might argue that her failure to raise the issue of an appointment of a GAL in the juvenile court constituted a forfeiture of the issue, and she presents an extensive argument as to why the forfeiture rule should not apply in this case. However, we do not need to address the forfeiture issue for two reasons: (1) the agency does not assert that mother's claim of error was forfeited; and (2) even assuming no forfeiture, we have concluded that mother's appellate argument fails on the merits.