Filed 11/19/20  In re Amber G. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re AMBER G., a Person Coming Under the Juvenile Court Law. | B302332 |
| | (Los Angeles County Super. Ct. No. 18CCJP04168) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| LEONARD G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Craig S. Barnes, Judge.  Affirmed.

Niti Gupta, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel for Plaintiff and Respondent.

Appellant Leonard G. (father) appeals from the juvenile court's November 12, 2019 orders terminating jurisdiction over his daughter, Amber (born 2005), and granting sole legal and physical custody of Amber to her mother with no visitation for father. Father contends the juvenile court erred because the court failed to make a finding of detriment to Amber before issuing the no-visitation order; there was no evidence of detriment to support a no-visitation order; and the juvenile court unlawfully delegated its judicial authority by denying visitation based solely on Amber's wishes.

The record discloses no abuse of discretion, and we therefore affirm the juvenile court's order.

## BACKGROUND

**Detention and section 300 petition**

In March 2018, San Bernardino County Children and Family Services (CFS) filed a Welfare and Institutions Code section 300[1] petition on behalf of Amber and her sister Ruby,[2] alleging, under section 300, subdivisions (b), (g), and (j), that violence by father against mother and mother's failure to protect the children from the violence, father's mental illness and emotional instability, and father's criminal history and recent incarceration placed the children at risk of harm. The petition further alleged that Amber had previously been removed from the parent's custody based on father's violent history, emotional

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Ruby is no longer a minor and is not a subject of this appeal.

2

instability, failure to provide, and that the children's half-siblings were removed from father on prior occasions because of father's emotional instability, mental illness, domestic violence, incarceration, and that father failed to reunify with the half-siblings after being offered family reunification services.

Law enforcement reported that father had been arrested for child endangerment, robbery, and assault with a deadly weapon. Father allegedly assaulted the male friend of a former girlfriend, Shay, and struck a vehicle occupied by Shay and her three children. The robbery charge was based on father taking Shay's phone from her.

CFS reported that the children had recounted numerous incidents of violence between father and his female companions. Ruby said father and Shay constantly argued and that she once saw Shay throw CDs at father and punch him. Ruby also witnessed violence between father and another woman named Serenity. Ruby said she felt like she was in the middle of father's problems and it was too much to handle. She said Amber was autistic and difficult to deal with.

Amber said father was nice but that he would get mad when people did things to him. She said Ruby sometimes had to calm him down.

Amber and Ruby had previously been declared dependent children in 2005 because of domestic violence between their parents. Father had hit mother with an open hand while she was holding Amber. Amber and Ruby were placed with a relative, who was later granted legal guardianship. The legal guardianship was terminated in 2013 and the children were returned to father's custody.

Father was present in custody at the March 22, 2018 detention hearing at which the juvenile court ordered Amber detained from both parents. Mother and father were accorded weekly monitored visits.

**Jurisdiction and disposition**

Father was incarcerated at the time CFS filed its April 2018 jurisdiction/disposition report. Father admitted that Shay, with whom he had an eight-month-old child, had been violent towards him in front of Amber and Ruby. Shay told the police that father had grabbed her phone and shoved her with his forearm while she held their eight-month-old child, causing her to fall backward and hit her head on father's car. Father then used a tire iron to strike a vehicle in which Shay was a passenger.

Father was present in custody at the May 25, 2018 contested jurisdiction and disposition hearing at which the juvenile court found father to be Amber's and Ruby's presumed father. The court declared Amber and Ruby to be dependent children and ordered them removed from parental custody. The juvenile court accorded mother family reunification services but denied services to father under section 361.5, subdivision (e), based on the length of his incarceration. Both parents were accorded weekly monitored visits.

**Progress hearing**

The case was transferred to Los Angeles County in July 2018. Father who remained incarcerated, was appointed counsel.

4

Father was not present at the August 8, 2018 progress hearing when the juvenile court addressed mother's participation in programs and the quality of her visits with the children.

**Six-month and twelve-month review hearings**

In January 2019, the juvenile court found mother in substantial compliance with her case plan. Mother and the children were having overnight and weekend visits.

Father remained incarcerated at the time of the six-month review hearing. Amber and Ruby were living with a paternal cousin. The children said they spoke with father by telephone twice a month. The paternal cousin confirmed that father called often.

On April 3, 2019, the juvenile court ordered Amber and Ruby returned to mother's custody, accorded mother family maintenance services, and set a section 364 review hearing for October 2019.

**Father's request for in-person visits**

In May 2019, father's counsel reported that father had requested in-person monitored visits with the children and asked the court to set a hearing on father's request. On May 17, 2019, the juvenile court ordered all prior visitation orders to remain in full force and effect.

**Further review hearings**

In its October 2019 status review report, the Los Angeles County Department of Children and Family Services (the Department) reported that Amber and Ruby remained in mother's home. Father had been released from custody, and

mother expressed concern that father would learn where she and the children were living. Both children said they did not want to visit with father. In August 2019, Ruby said she was afraid of father, and that if she were to visit with him, she would do so only at the Department's office and in the presence of a social worker. Ruby said she was afraid that father would abscond with her to another state. Amber said she wished to stay with mother and did not want to see father. In September 2019, both children reiterated that they did not want to see father. Amber told the social worker: "I am afraid he is going to be mean because I think he is just going to cause more problems and he's going to ask me why I am with my mom and not with him. I am afraid he will take me from my mom."

The Department recommended terminating jurisdiction with a family law order awarding mother sole legal and physical custody and no visitation for father. At the request of father's counsel, the juvenile court continued the section 364 review hearing to November 12, 2019, and ordered the Department to submit a supplemental report.

**Contested section 364 review hearing**

In a last-minute information for the court filed on November 5, 2019, the Department reported that Amber and Ruby continued to state they did not want to see father. Amber told the social worker she was having nightmares that father was trying to enter the home to take her and Ruby away. Ruby said she did not want to see father ever again.

Father did not appear at the November 12, 2019 contested hearing. The Department's counsel asked the juvenile court to proceed by terminating jurisdiction and issuing a custody order

denying father visitation. The children's counsel supported terminating jurisdiction and said the children were "adamant about not visiting with their father."

Father's counsel stated: "I know the children don't want to see father. However, I would like for the custody order to reflect that visitation can resume if the children want it to occur. . . . I am sure they are old enough [to] make their own decision. But I just wanted to see if I can just put the ball in their court if they wanted to visit." The children's attorney objected and said the family could modify the no-visitation order in family court if they wished to do so.

The juvenile court found continued supervision of the family was no longer necessary and terminated jurisdiction, granting mother sole physical and legal custody of the children and no visitation for father. This appeal followed.

## DISCUSSION

### I. Forfeiture

We reject the Department's contention that father forfeited any appellate challenge to the no-visitation order by failing to object in the juvenile court below. The record shows that father's counsel timely requested a contested section 364 hearing to object to the Department's proposed no-visitation order. No forfeiture occurred at the contested hearing. Father's counsel requested alternatives to a no-visitation order that were rejected by the juvenile court.

### II. Applicable law and standard of review

When a juvenile court terminates its jurisdiction over a dependent child, it may issue an exit order, which can determine

7

custody or visitation.  (§ 362.4.)[3]  When making an exit order, the court must consider the totality of the child's circumstances and the best interests of the child.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 201, 208.)  A juvenile court has broad discretion in making such orders.  (*Id.* at p. 214.)

## III.  No legal error

In exercising its discretion in this case, the juvenile court was not required to make a finding of detriment or harm to Amber before denying father visitation.  The no-visitation order challenged by father was made at a section 364[4] hearing, as part of the court's exit orders pursuant to section 362.4 when the court terminated jurisdiction and dismissed the dependency case.  Nothing in section 362.4 or relevant case law concerning section

---

[3]     Section 362.4, subdivision (a) provides in part:  "If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, . . . the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child."

[4]     At a section 364 hearing, the juvenile court determines whether continued jurisdiction over a dependent child is necessary.  Section 364, subdivision (c) provides in part:  "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary.  The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of the evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."

362.4 requires a finding of detriment to deny visitation in an exit order.  Father's reliance on case law and a statute not applicable to exit orders made pursuant to section 362.4 is therefore unavailing.  (§ 362.1, subd. (a); *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008; *In re C.C.* (2009) 172 Cal.App.4th 1481 [visitation under section 362.1 is mandatory unless court finds visitation would pose a threat to the child's safety].)  Section 362.4 does not require a finding of detriment to deny visitation in exit orders.  The Legislature knows how to require the juvenile court to make an express finding of detriment (see, e.g., §§ 361.5, subd. (f); 362.1, subd. (a)(2); 366.21, subd. (h); 366.22, subd. (a)), and it did not do so in section 362.4.  The juvenile court accordingly did not err by not making a finding of detriment to Amber before issuing the no-visitation order.

**IV.  No abuse of discretion**

Our review is limited to determining whether the order denying father visitation was an abuse of discretion.  (*In re Chantal S., supra*, 13 Cal.4th at p. 201.)  It was not.

The record shows that Amber was removed from father's custody because of repeated exposure to his violence, as well as his emotional instability and criminal activity.  After successfully reunifying with mother, Amber and Ruby repeatedly stated they were afraid of father and did not want to see him.  Amber said she had nightmares about father trying to enter her home to take her away from mother.

Father correctly points out that a juvenile court cannot delegate its authority by giving a child absolute discretion to decide whether visitation will occur.  (*In re Julie M.* (1999) 69 Cal.App.4th 41, 48-51.)  A court may, however, issue a visitation

9

order that takes into consideration the child's wishes and well-being.  (*Id.* at pp. 50-51.)  The child's wishes may be a "dominant" factor in determining visitation, so long as it is not the sole factor. (*Id.* at p. 51.)

Here, father's repeated exposure of the children to his violence and emotional instability, Amber's insistence that she did not want to see father, that she was afraid of him, and that she had nightmares about him, provide ample support for the juvenile court's no-visitation order.  The record discloses no abuse of discretion.

## DISPOSITION

The order terminating jurisdiction and denying father visitation is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
     CHAVEZ

We concur:

_____, P. J.
LUI


_____, J.
ASHMANN-GERST