Filed 4/25/22  In re M.C. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | B312267 |
| | (Los Angeles County Super. Ct. Nos. 20CCJP03695, 20CCJP03695A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| M.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge, Pro Tempore of the Juvenile Court.  Affirmed.

Elizabeth A. Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Appellant M.C. (father) appeals an exit order issued under Welfare and Institutions Code section 362.4[1] upon termination of the juvenile court's jurisdiction over father's son, M. Father contends the juvenile court erred by ordering that he and M. complete conjoint therapy without providing a means for completing that therapy. Respondent Los Angeles Department of Children and Family Services (DCFS) disagrees with father's interpretation of the order, asserting that the court ordered only monitored visitation and cited father's failure to complete conjoint therapy as the *reason* the visits would remain monitored, but did not order therapy at all. We agree with DCFS's interpretation of the order and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background and previous appeal

The underlying facts are described in our previous opinion, *In re M.C.* (July 22, 2021, No. B308704 [nonpub. opn.]), and we summarize them only briefly here. Eleven-year-old M. came to the attention of DCFS on June 1, 2020, after suffering injuries resulting from discipline by father. M. reported that on various occasions, father punched him, choked him, hit him with a belt and hangers, chased him with a knife, and threatened to kill him. M. further reported that father drank alcohol every day and got

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

"mean and aggressive" when he drank. M. also witnessed violent altercations between father and father's girlfriend.

In October 2020, the juvenile court found that jurisdiction over M. was appropriate under section 300, subdivisions (a) and (b)(1) based on father's physical abuse of M., alcohol abuse, and domestic violence in M.'s presence. The court ordered that M. remain in the custody of his mother (mother), and father's visitation be monitored. The court further ordered father to complete drug and alcohol testing, parenting classes, conjoint therapy with M., and individual counseling to address case issues including domestic violence and alcohol abuse. In his previous appeal, father challenged the court's jurisdictional findings regarding father's alcohol abuse and domestic violence, and the disposition order's requirement that father drug test and participate in counseling. We affirmed the orders.

## B.    Background to current appeal

An April 5, 2021 status review report stated that M. continued to live with mother; he was clean and healthy, and consistent in his school and therapy attendance. Father maintained his employment, continued to participate in services, and had completed a domestic violence program. From November 20, 2020 to March 5, 2021 father had eleven negative drug tests and five missed tests.

In February 2021, DCFS inquired about conjoint therapy for M. and father. M.'s therapist was "not comfortable providing conjoint counseling with father," and "did not feel the child was ready for conjoint therapy and recommended conjoint therapy be conducted at an outside agency." DCFS provided father with a list of agencies providing conjoint therapy with sliding scale fees. The children's social worker (CSW) asked father to "take more

3

responsibility in locating a therapist and enrolling in services." On March 16, 2021, father told the CSW he had not been able to find an affordable therapist. Father's visitation with M. had been inconsistent, with many missed and shortened visits. M. said he was not comfortable in father's presence without a monitor. DCFS found that the inconsistent visitation "does not allow for quality bonding time for father and child," and determined that M. was at moderate risk of future harm or abuse.

DCFS recommended that the court terminate dependency jurisdiction and issue an exit order providing joint legal custody to both parents, sole physical custody to mother, and monitored visitation with father.

At the section 364 judicial review hearing on April 5, 2021, the court noted that DCFS's recommendation was to terminate jurisdiction. Father's counsel argued that father was in compliance with the case plan other than the conjoint therapy, and asked for unmonitored visitation including overnight visits. Mother's counsel objected to the request for unmonitored visits, noting that father's visits had been inconsistent and M. did not feel comfortable with father without a monitor present. Mother's counsel also stated that father had not enrolled in conjoint therapy and he and M. "have not addressed the concerns between them." Mother suggested that father could have the order changed in family law court "once this aspect of the case plan is completed." M.'s counsel joined mother's arguments, and noted that father had not visited M. for three weeks, and M. did not know why. DCFS agreed with mother and M.'s contentions.

The court stated that M. "[n]ot being comfortable in itself is not a valid basis for not visiting a parent. But in this case, we have so many missed visits or visits that were canceled, it looks

4

like more than half." The court checked the record, and said, "Far more than half never occurred." The court questioned whether consistent visitation would have made M. more comfortable with father, and stated, "I would be left to guess as to what would have happened had the father consistently visited his child. And I'm not going to guess." The court found that father had complied with most of the case plan, "but has been noncompliant with probably the most important feature of the case plan and that is to build a relationship with [the] child."

The court terminated jurisdiction over M., and ordered father's visitation to "remain monitored until father and minor are able to resolve these anxieties that [M.] has in a therapeutic setting." Father's counsel asked if "the JV-206 reason for the monitored visits is that [M.] and father need to do conjoint counseling?" The court responded, "Yes." Father's counsel said, "Thank you, your honor. And just note father's objection." The court responded, "So noted."

The juvenile court entered written orders on the mandatory juvenile court forms. Form JV-200 (Custody Order—Juvenile—Final Judgment) included no mention of conjoint therapy. Attachment JV-205 (Visitation (Parenting Time) Order—Juvenile) stated that father's visits were to be monitored "until further order of the superior court," "for the reasons stated on . . . the attached form JV-206." Attachment JV-206 (Reasons for No or Supervised Visitation—Juvenile) stated that father "was ordered to have . . . only supervised visitation" because he "has not completed" "conjoint therapy with" M.

Father timely appealed.

## DISCUSSION

Father contends the juvenile court abused its discretion by conditioning unmonitored visitation on father and M.'s participation in conjoint therapy without ensuring a means for providing that therapy. DCFS asserts that father has forfeited any objections to the court's order. DCFS further contends that the juvenile court neither ordered conjoint therapy nor conditioned any change in visitation on father's participation in conjoint therapy; rather, the court simply stated that the *reason* it was requiring visitation to be monitored was father's failure to complete conjoint therapy. We find no error and affirm.

"When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court." (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30.) We review a section 362.4 exit order for abuse of discretion, and do not disturb the order unless the court exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)

## A. Father's contentions have been forfeited

DCFS asserts that father's contentions have been forfeited, and we agree. "'[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.'" (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 672; quoting *In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

6

Here, after the court announced its order, father's counsel asked the court to "note father's objection." Father's counsel did not articulate whether he was objecting to the custody order, the visitation schedule, the visitation monitors (about which the parties had already disagreed), or the court's mention of conjoint therapy. "General objections are insufficient to preserve issues for review. [Citation.] The objection must state the ground or grounds upon which the objection is based." (*In re E.A.* (2012) 209 Cal.App.4th 787, 790.) Indeed, had father's counsel voiced the objection father now raises on appeal, the court could have addressed the parties' current disagreement about what the court actually ordered. Father's general objection was insufficient to preserve the issue for appeal.

We nevertheless have discretion to consider forfeited issues in juvenile cases. (*In re S.B., supra,* 32 Cal.4th at p. 1293.) "[D]iscretion must be exercised with special care" in such matters; "[b]ecause these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance." (*Ibid.*) Here, we exercise our discretion to consider the substance of father's contention to promote stability for M. and potentially avoid additional proceedings regarding the order at issue.

## B.    The court's order was not conditional

Father argues that the "juvenile court abused its discretion when it issued an exit order conditioning unsupervised contact between father and son on their participation in conjoint counseling, without ensuring the mechanism for conjoint counseling was in place." DCFS asserts that the juvenile court neither ordered conjoint therapy nor conditioned unmonitored visitation on the completion of therapy; rather, "the juvenile court

7

was ordering that father's visits be monitored and . . . the reason provided on [form] JV-206 was the lack of conjoint therapy."

We agree with DCFS that the juvenile court did not order father to participate in conjoint therapy, nor did it condition any future change in visitation on father's participation in counseling. A juvenile court may order counseling as part of an exit order, and may issue an order "conditioning custody or visitation on a parent's participation in a counseling program." (*In re Chantal S.* (1996) 13 Cal.4th 196, 204, citing sections 362.4 and 362, subd. (c); see also *In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456 ["juvenile courts may require participation in counseling and other programs in an exit order"].) However, the juvenile court may not "condition the *family court's* modification of an exit order upon the completion of counseling and other programs." (*In re Cole Y.*, 233 Cal.App.4th at p. 1456.) Under section 302, subdivision (d), an exit order issued by the juvenile court may be modified only if the family court "'finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child.'"

Here, the juvenile court placed no conditions on any future modification of the visitation order. The court stated that father's visits were to be monitored "until . . . further order of the superior court." Although the court at the April 5 hearing suggested that father and M. could resolve their relationship issues in a therapeutic setting, the order did not state that father was *required* to attend conjoint therapy or that his visitation would be changed if he completed therapy. The court listed the failure to complete conjoint therapy on form JV-206 as the *reason* for ordering monitored visitation. As form JV-206 itself states,

8

"Completion of one of the programs above *might*, but need not, constitute a significant change of circumstances for purposes of modifying this final custody order.  (Welf. & Inst. Code, § 302(d).)"

Father asserts that the visitation order was "illusory," because "the court designed a visitation order where there was no mechanism in place for [father] and [M.] to accomplish the order, namely participate in conjoint counseling."  Father cites *In re Hunter S.* (2006) 142 Cal.App.4th 1497, in which the court stated, "A visitation order which fails to protect a parent's right to visit is illusory.  If, as here, the court grants visitation, 'it must also ensure that at least some visitation at a minimum level determined by the court itself, will in fact occur.'"  (*Id.* at p. 1505, quoting *In re S.H.* (2003) 111 Cal.App.4th 310, 313.)  In both *Hunter S.* and *S.H.*, the juvenile court ordered visitation between the parents and the children, but allowed the children to prevent any visitation from actually occurring.  Both *Hunter S.* and *S.H.* held that the juvenile court erred by doing so.  (See *Hunter S.*, *supra*, 142 Cal.App.4th at p. 1500 [the juvenile court "erroneously abdicated its authority by delegating discretion over visitation" to the mother's estranged son]; *S.H.*, 111 Cal.App.4th at p. 313 ["when the court orders visitation, it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur"].)

No such "illusory" visitation order is at issue here.  The court ordered monitored visitation between father and M. to continue until the superior court changes the order.  The court's articulation of  its reasoning for requiring monitored visits did not render the order illusory.  In addition, father cites no authorities suggesting that after termination of a juvenile court

9

case, the court or DCFS is required to continue facilitating reunification services.  If, in the future, father believes there has been a change in circumstances that would warrant a shift to unmonitored visitation with M., he may seek modification of the order in family court.  (See, e.g., *In re Chantal S., supra*, 13 Cal.4th at p. 214; *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1164; § 302, subd. (d).)

### DISPOSITION

The juvenile court's order is affirmed.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

MANELLA, P. J.

CURREY, J.