Filed 4/7/25  In re T.P. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re T.P., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D085298 |
| Plaintiff and Respondent, | (Super. Ct. No. J521414) |
| v. | |
| H.W., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lilys McCoy, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

H.W. (Mother) appeals the juvenile court's orders awarding legal custody of her child T.P. (Child) to the father (Father) and terminating jurisdiction. We find the court did not abuse its discretion and affirm.

**BACKGROUND**

A.    *Factual Background*

Mother and Father lived in Texas when Child was young. Father was not a custodial parent but had regular contact with Child. When Child was approximately five years old, Mother moved out of Texas with Child and his older sibling (apparently also a biological child of Mother and Father's). Father did not know how to find Child and did not have contact with him for approximately nine years.

In 2023, when Child was 14, he was removed from Mother's custody after Mother choked him while having a mental health episode. Mother had reportedly assaulted Child on previous occasions, including by headbutting him, resulting in bruising on his cheeks and forehead; slapping him in the face hard enough to leave a mark; and striking him with a butter knife, resulting in scarring. Friends and family members were aware of the abuse.

Mother was not otherwise meeting Child's needs. Child reported Mother drank excessively and that he did not feel safe in her care. Child had been diagnosed with and medicated for ADHD, anxiety, and depression. According to Child's older sibling, Mother took Child's medication, over-medicated him, and gave him unprescribed medication. Mother failed to follow through with his mental health appointments or to respond to inquiries from his school. Mother told a family friend that she no longer wanted Child. In addition, Child's older sibling previously reported a history of neglect and abuse.

2

Child began living with a caregiver. He struggled behaviorally and emotionally and was eventually admitted to the hospital for suicidal thoughts. He was released, but made suicidal statements, and was again moved to a mental health facility. The social worker's report indicates Mother did not contact Child or the facility, did not have a plan to care for him after discharge, and did not follow through on contacting her insurance or Child's school to develop a plan.

During his inpatient treatment, Child's doctors diagnosed him with major depression, major recurrent post-traumatic stress disorder, and a learning disorder, recommending "outpatient therapy, medication management, a safety plan upon discharge, and a structured environment for placement." One of his doctors opined that Child "is 'reflective of the environment,' meaning if the environment or others around him are chaotic, he will reflect this." When Child was ready for discharge from the mental health facility, Mother was in a sober living facility, was unable to take placement of him, and had not made arrangements for anyone else to care for him. Rather than a residential treatment program, Child's doctor advised that the "ideal situation would be for the [Child] to go with [Father], who will hopefully 'have a stable environment and will be able to help'" Child. Father and Child both agreed to the placement. Child was moved to a foster parent for several months before being placed with Father in September 2024.

Father demonstrated significant concern for Child's needs. Before taking placement of the Child, Father said, " 'I love him and I want him, but I don't want to traumatize him anymore.' " Although Father had not seen Child in many years, he reviewed records to learn about Child's needs, researched and found services for Child, and determined the cash price of Child's medications. Father and his partner both took parenting classes, and

3

Father reported they "want to continue to learn parenting skills like how to work with teenagers."

Child did well living with Father in the months after he moved, telling the social worker he was "excited to be with his father and enjoying all the family support he has." He reported that school was "going great," and that "he loves his teachers[,] and has made a lot of friends." He was happy that his older sibling had moved with him and liked "the calmness that comes along with living in Texas." Father and his partner also reported that Child was doing well in school, communicating well, and no longer having behavioral issues. They told the social worker "they love him 'so much,' " and that child "has brightened their life and the family is glad to meet him."

Child has mostly declined contact with Mother since leaving her care. Initially, Child did not want to talk to Mother and wanted a restraining order against her. He grew upset when Mother tried to contact him. Child eventually agreed to phone calls with Mother, which went well for a while. However, he blocked her phone number after she upset him, and he said the thought of further contact with her gave him anxiety. He declined Mother's request for pictures. He did not want Mother to have contact information for Father or his service providers in Texas.

B.    *Procedural Background*

Several months after Mother had choked Child, the Agency filed a petition under Welfare and Institutions Code section 300, subdivision (c), alleging Child needed "mental health treatment including outpatient therapy, medication management, a safety plan upon discharge, and a structured environment which [Mother] is unable to provide." The juvenile court took jurisdiction and ordered Child detained out of Mother's home. At the contested disposition hearing, the juvenile court removed Child from

4

Mother's custody and placed Child with Father, ordering continued supervision to ensure Child received appropriate services, and setting an interim review hearing.

At the interim hearing, the Agency recommended Child remain with Father and that the juvenile court terminate jurisdiction and issue exit orders. Mother agreed with termination of jurisdiction but requested joint legal custody, minimum visitation, and access to Father's contact information. Father requested that he be awarded sole legal and physical custody. He argued that, because Mother resided in a different state, granting joint custody would hinder Father's ability to make medical and educational decisions for Child. He was also concerned Mother could abscond with Child again if she had joint custody.

Both the Agency and Child's counsel joined in Father's argument for sole custody. Child's counsel noted that Child had been removed from Mother because of her inability to provide adequate care and that Father had been providing mental and emotional stability, which was "paramount." Counsel further explained that Child did not want contact with Mother at that time and pointed to the family's concern that Mother would be disruptive to his care. Counsel confirmed with Child that he wanted Father to have sole custody. The Agency argued, "This is a pretty severe case of a minor that has significant mental health needs. And he is doing so well right now, it does seem that it's in his best interest to respect his wishes and make sure that he's protected moving forward."

Mother argued that concerns about hindering Father's ability to make decisions were "speculative," and there was "no indication that the mother wouldn't agree" when her input was required. Mother claimed "absconding

5

with the minor" was "factually in dispute" and not "really relevant where we are at today."

After taking the matter under submission, the juvenile court issued exit orders awarding Father sole legal and physical custody and terminating jurisdiction.  Mother appeals.

## DISCUSSION

The sole issue on appeal is Mother's claim that the juvenile court erred by awarding sole custody to Father.  We generally review a juvenile court's exit orders for abuse of discretion and will not disturb the order unless the court's determination was arbitrary, capricious, or patently absurd.  (*In re Bridget A.* (2007) 148 Cal.App.4th 285, 300–301.)  The juvenile court, "which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.)  In light of evidence of Mother's history of violence and instability, a contentious relationship between Mother and Father, a successful placement with Father, and teenage Child's strong preference for sole custody, we cannot say the juvenile court abused its discretion.

As an initial matter, Mother claims "granting father sole legal and physical custody was a drastic remedy given the circumstances in this case." This argument appears to wrongly assume there is a preference for joint custody.  In dependency proceedings, the juvenile court "must look to the totality of a child's circumstances" to determine the child's best interest.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.)  "This purpose would obviously be frustrated if a juvenile court, on termination of dependency jurisdiction . . . , were required to presume that joint legal and physical custody was in the best interest of a minor." (*Id.* at p. 206.)

6

Mother claims "[n]o facts showed mother was unwilling to work with father to make important life decisions for her son." However, Mother once moved out of state with Father's children without telling Father their whereabouts. Even if the circumstances are in dispute, this suggests a historically contentious relationship and lack of trust between the parents. In addition, Father, Child's sibling, and one of Child's caregivers told Agency representatives that Mother is dishonest and manipulative. The juvenile court could reasonably conclude that Mother might impede Father's ability to make important decisions about Child's care.

Mother argues that Child's wishes were not determinative and "did not justify terminating mother's rights to make educational and medical decisions for his well-being." But there is no indication that the court relied solely on Child's preferences or that this factor was dispositive.

Mother also claims the court should have considered that Mother has been working on her sobriety and mental health and "had gained insight into the case issues." The record reflects that the Mother did not make this argument below, although the juvenile court did consider the Agency's addendum report which noted Mother's progress. Even assuming she has not forfeited this argument, see *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502, Mother has not demonstrated an abuse of discretion. Child had been thriving in Father's care without significant contact with Mother. Although there was a brief interlude of positive interactions, Child generally found Mother's contact distressing, and there was a significant history of instability and neglect in her care. Mother's more recent efforts at self-improvement do not show that it would be in Child's best interest to award her joint legal custody.

Finally, Mother argues the juvenile court erred because the circumstances of this case are unlike the circumstances in *In re Jennifer R.*

7

(1993) 14 Cal.App.4th 704, in which the court affirmed an order awarding sole custody. That another court found other circumstances merited an award of sole custody is of little import. As we have explained, the circumstances of *this* case demonstrate no abuse of discretion.

## DISPOSITION

The judgment of the juvenile court is affirmed.


IRION, Acting P. J.

WE CONCUR:


DO, J.


KELETY, J.