Filed 6/22/23  In re S.W. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.W., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.W.,<br><br>    Defendant and Appellant. | A166403<br><br><br>(City and County of San Francisco Super. Ct. No. JD213240) |

This juvenile dependency proceeding concerns S.W. (the child), whose parents are D.W. (Father) and K.W. (Mother).  Father appeals from an August 24, 2022, custody order and final judgment (one document), in which the court dismissed the dependency proceeding, granted Mother sole legal and physical custody, and denied Father visitation with the child.[1]

---

[1]    We deem Father's notice of appeal from an August 23, 2022, order, ordering full legal and physical custody to Mother and no visits to Father, to be a notice of appeal from the August 24, 2022, Judicial Council form custody order and final judgment (one document).  (Cal. Rules of Court, rule 8.100(a)(2) [notice of appeal should be liberally construed; it is sufficient if it identifies the judgment or order being appealed].)

1

Father does not challenge the termination of dependency jurisdiction or the custody order in favor of Mother. His only contention on appeal is that the court erred in denying visitation. Because we find no abuse of discretion in the court's denial of visitation, we affirm.

FACTS[2]

*Background*

Father and Mother are married and the parents of S.W., who was born in October 2021.

Mother used methamphetamines at times during the last three months of her pregnancy. She reported that her drug use followed a series of traumatic events and was also triggered by Father's involvement with another woman and Father's arrest and incarceration on murder charges just weeks before the birth of the child. Mother reported that in 2019 she had been diagnosed as suffering from depression but did not take prescribed medication; after the child's birth, Mother began taking prescribed medication which she found ameliorated her moods. Father reported that during Mother's pregnancy, he was not living consistently with her and did not have stable employment. Father knew Mother was abusing drugs intermittently during the pregnancy and he submitted to an allegation that he had "made it easier for her to use drugs."

In October 2021, the San Francisco County Human Services Agency (the Agency) intervened when the child tested positive for drugs at birth. Mother and the child entered a residential drug treatment program. The Agency filed a petition under Welfare and Institutions Code[3] section 300,

---

[2] We set forth only those facts necessary to resolve this appeal.

[3] All statutory references are to the Welfare and Institutions Code.

amended twice, seeking to declare the child a dependent of the court for the purpose of initiating a family maintenance plan for Mother.

At hearings held in November 2021, the court appointed counsel for Father, who was still incarcerated. Father's status was elevated to presumed father as he and Mother were married at the time of the child's birth.

*Combined Jurisdiction and Disposition Hearing*

On January 26, 2022, the juvenile court held a combined jurisdiction and disposition hearing. Before the hearing, the Agency filed a report and several addenda recommending that S.W. be declared a dependent, that Mother be offered family maintenance services, and that no services be offered to Father.

The Agency reports reflected that Mother promptly engaged in mental health and substance abuse services after Agency intervention in October 2021. By January 14, 2022, she had completed a residential drug treatment program and both she and the child were doing very well. Father remained incarcerated, his release date was unknown, and the reports reviewed his extensive criminal history. The Agency did not recommend services for Father given his incarcerated status and given that the detention facility where Father was incarcerated offered only video visits due to the COVID-19 pandemic. Mother did not want to participate in or supervise the child's visits with Father.

Based on the parents' submissions, the court found true the second amended petition's allegations regarding Mother's substance abuse and mental health issues and Father's failure to protect the child from Mother's drug use while she was pregnant. The court found the child to be a person described in section 300, placed the child in Mother's custody, and ordered the Agency to provide family maintenance services for Mother. The court did

3

not grant family maintenance or reunification services for Father but did grant supervised visits a minimum of once a month, "if possible."

*Contested Six-Month Status Review Hearing*

The Agency filed a report for the status review hearing originally scheduled for July 19, 2022 ("July 19 report") and an addendum report for the continued hearing scheduled for August 23, 2022 ("August 23 report"). In each report, the Agency recommended the court dismiss the dependency and grant Mother sole legal and physical custody of the child with no visitation to Father.

As reflected in the reports, Mother had consistently engaged in outpatient substance abuse treatment services, participated in collaborative family treatment court, and was near completion of a parenting class. The child was physically and emotionally on target. Mother planned to divorce Father.

Father remained incarcerated. The July 19 report stated that while Father had been granted supervised visits, Mother did not allow the child to participate because she felt it was not in the child's best interest given Father's complete absence from the child's life (including her pregnancy), and due to the nature of his criminal charges. The August 23 report noted that virtual visitation between the child and Father had not been possible. The social worker had asked Mother if the child could attend virtual visits supervised by the Agency, but Mother was not willing, again due to Father's lack of involvement with her pregnancy or the child and the severity of the criminal charges against Father.

At the status review hearing, the court considered the Agency reports, heard the testimony of Mother and the Agency social worker, and allowed a statement made by Father. The court also considered counsels' arguments.

4

The Agency social worker testified she held bachelor's and master's degrees in social work and had interned with the Los Angeles Department of Children and Family Services and the San Mateo Children and Family Services in the emergency response department. She was currently a protective services worker with the Agency, assisting families to maintain safe homes, reunification, and permanent placements, and working with newborns to teenagers.

The Agency social worker had been assigned to this case for approximately six months and was aware the court had ordered virtual visits. She had explained to Mother that the court-ordered visits were mandatory, but Mother had refused to allow the child to participate even if Agency staff supervised the visits. Mother did not want any visitation as Father had no relationship with the child and was not present when she needed him during the pregnancy or birth. Mother was also concerned about the severity of the charges pending against Father.

The Agency social worker opined that it would not be in the child's best interest to have virtual visits with Father as the child never had a relationship with Father and had no familiarity with his face or voice. She explained that a young child is typically unable to focus on a screen, has difficulty engaging on a virtual call, and often just does their own thing during the virtual visit. She did not believe that a virtual visit either once a month or once every two weeks would increase the child's awareness of who Father was, especially given the child's young age.

Mother testified that she last saw Father approximately one month before he was incarcerated on criminal charges in 2021, at which time she was pregnant with the child. Mother was aware of the court-ordered visits but did not think it was in the child's best interest to participate in those

5

visits. She stated the child was very connected to her, only wanted to be with her, and cried even when being held by his older half-siblings.

Father told the court he wanted a relationship with his son. Father's counsel informed the court that Father did not contest dismissal of the dependency, but requested the court continue the earlier order allowing for once monthly supervised visits with the child.

The court determined that dismissal of the case was appropriate and awarded Mother sole legal and physical custody of the child. The court denied Father's request for visitation, finding that based on the totality of the circumstances it was not in the child's best interest at that time for the child to engage in virtual visits. The court commented that since Mother had not facilitated the previously court-ordered visits, Father would not be penalized for failing to take advantage of those visits. Nonetheless the court was tasked with making its decision based on the extant circumstances, which were that Father had been incarcerated since before the child had been born and hence had never seen the child. When counsel asked if the court was making a detriment finding, the court commented that it was not denying visitation based on detriment but rather on the child's best interest.

In its August 24, 2022, Judicial Council form custody order and final judgment (one document), the court included an attachment that reads: "The Court finds and orders: [¶] Based upon the totality of the circumstances at this point in time, the Court is not ordering visits for the father, [D.W.] If there is a change in circumstances, [the father] can bring the matter to the Court and ask for a change in the current order. The father is currently incarcerated pending charges including violation of Penal Code section 187, murder. [¶] The Court finds it is not in the minor's best interest to order that he be put in front of a screen for monthly virtual visits with his father."

6

Father's timely appeal ensued.

## DISCUSSION

The applicable law is well settled. When terminating its jurisdiction in a dependency at a hearing held pursuant to section 364, the juvenile court has broad discretion to issue exit orders concerning custody and visitation (§ 362.4, subd. (a)). Once issued, the exit orders are transferred to the family court and remain in effect until they are modified or terminated by the family court. (*Id*., subds. (b), (c).) Indeed, the custody order and final judgment in this case has been filed with a family law case number in the San Francisco Superior Court.

On appeal, we review an exit order for an abuse of discretion. (*In re J.M.* (2023) 89 Cal.App.5th 95, 113.) "We will not disturb the juvenile court's decision ' " 'unless the . . . court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Ibid*.) Here, we cannot conclude the court abused its discretion in denying Father visitation.

As a preliminary matter, we find unavailing Father's reliance on statutory and case law applicable to custody and visitation orders made in the context of proceedings between parents under the Family Code. "Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, '[t]he presumption of parental fitness that underlies custody law in the family court just does not apply. . . . Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' " (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 112.)

7

In making exit orders, the juvenile court's primary focus must be on the child's best interests. (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 113, and the cases cited therein, including *In re T.S.* (2020) 52 Cal.App.5th 503, 513 [when the juvenile court makes custody and visitation orders under § 362.4, " 'the court's focus and primary consideration must always be the best interests of the child' "].) The record before us demonstrates the court focused on the best interest of the child in deciding whether to order video visits – the only visits available due to Father's incarceration – and considered the totality of the circumstances. Before the court was evidence the child was thriving, Mother had maintained her sobriety and was committed to providing high quality care, and Father had no prior connection with the child. And the Agency social worker explained the extremely limited, if any, utility of virtual visits given the child's very young age coupled with no prior contact. In determining that the 10-month-old child's best interest would not be served by placing him in front of a video screen for a virtual visit with an unknown person, the juvenile court "was entitled to find the social worker credible and to give [great] weight to her assessments and testimony." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53, disapproved on another point in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5; see *In re Liam L.* (2015) 240 Cal.App.4th 1068, 1089 ["[t]he juvenile court could reasonably agree" with the social worker's recommended placement after reviewing all the evidence]; *In re Cole C.* (2009) 174 Cal.App.4th 900, 918 [the juvenile court "was entitled to find the social worker's opinion[s] credible and give great weight to her assessment"].) As an appellate court, it is not our role to reweigh the evidence and substitute our judgment for that of the juvenile court. (*In re Casey D.*, *supra*, at pp. 52–53).

We see no merit to Father's assertion that the court had to find visitation detrimental to the child as a prerequisite to issuing its exit order under section 362.4. Father points to no authority requiring such a finding of detriment, and indeed, the law imposes no such requirement. (*In re J.M.*, *supra*, 89 App.Cal.5th at p. 113 [in making exit orders under § 362.4 the juvenile court is not required to make a finding of detriment "under any circumstances"].)[4] And, while the court stated it was not making a finding of detriment, it clearly considered potential benefits and detriments to the child by virtue of its ruling regarding the best interest of the child and acted well within its discretionary authority in denying visitation. It also considered Mother's failure to allow visitation, and her rationale for doing so.

We are not persuaded by Father's arguments that the court should have issued an exit order continuing the existing seven-month-old January 2022 visitation order to correct Mother's "conception" that she could ignore a court order or avoid a "de facto absolute delegation" to Mother to determine the terms of future visitation. The court had the authority to consider evidence regarding whether to continue or modify the existing visitation order. (See *In re T.S.*, *supra*, 52 Cal.App.5th at p. 514 [during § 364 hearing the juvenile court is "empowered to change prior orders" of custody and visitation]; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30 [during § 364 hearing the juvenile court erred in finding that it was compelled to adopt an existing seven-month-old visitation order without change and in refusing to consider a parent's proffered evidence for a change in the order].) Having considered the

---

[4] Accordingly, we find unavailing Father's reliance on cases decided under completely different sections of the Welfare and Institutions Code, and which largely focus on visitation in the context of reunification services not at issue here.

evidence presented, and "[b]ased upon the totality of the circumstances," the court exercised its discretion and determined the visitation order should not be continued after termination of the dependency.

In addition, and as made clear by the court at the hearing, the exit order "contemplates that all persons subject thereto would remain under the control of the family court and that any party who wished to contest the . . . continued propriety of the order based on changed circumstances . . . would be able to raise that issue in the family court." (*In re Chantal S.* (1996) 13 Cal.4th 196, 214 [exit orders concerning father's visitation, which left open issues that remained within the purview of the family court, did not constitute an unlawful delegation of the juvenile court's authority].)[5] The exit order places no limitation on Father's ability to seek future visits by petitioning for that relief in the family court and, contrary to Father's contention, in no way limits him to seeking future visits only if he is no longer incarcerated or can prove his innocence. Nothing in the exit order

---

[5]     If we were to find the juvenile court erred in its exit order, we would be required to reverse and remand the matter to the family court, and not the juvenile court as Father requests. "While remand to a court different from the one which issued the judgment appealed from is, to say the least, unusual, such a result is necessarily inherent in section 362.4, which expressly contemplates future proceedings in the family court. By providing that the exit order be filed [in the family court] . . ., the Legislature has demonstrated an intent that any future court proceedings . . . be in the family court. When the merits of a section 362.4 exit order are at issue (as distinct from the validity of termination itself), the time lag inherent in the appellate process itself means that any remand must necessarily be directed to the family court. Who else is there when juvenile court jurisdiction has been correctly terminated?" (*In re John W.* (1996) 41 Cal.App.4th 961, 976-977.) Like any other parent and as standard when seeking a visitation modification, on remand Father would be required to show (1) a substantial change of circumstances since the exit order was made, and (2) that the proposed modification would be in the child's best interest. (§ 302, subd. (d).)

10

would preclude Father from requesting future visits, for example, based on the child being of a sufficient age to meaningfully participate in virtual visits or the availability of in-person visits. Of course, our decision should not be read as expressing any opinion as to the types of changed circumstances that would support a request for future visitation.

In sum, for the reasons stated, we uphold the exit order denying visitation.

## DISPOSITION

The juvenile court's August 24, 2022, Judicial Council form custody order and final judgment (one document) is affirmed.

_____

Petrou, J.

WE CONCUR:

_____

Tucher, P.J.

_____

Rodríguez, J.

A166403/*In re S.W. – San Francisco County Human Services Agency v. D.W.*