Filed 6/6/25  In re T.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re T.G., a Person Coming Under the Juvenile Court Law. | C102108 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.F., <br><br> Defendant and Appellant. | (Super. Ct. No. JV20200193) |

   T.F. (mother), the mother of minor T.G. (the minor), appeals from the juvenile court's order for a permanent plan of legal guardianship, termination of dependency

1

jurisdiction, and supervised visitation. (Welf. & Inst. Code, §§ 366.26, 395.)[1] Mother contends the juvenile court improperly delegated to the minor's legal guardians the authority to determine whether mother's visitation would occur, by requiring the parties to agree on a visitation monitor. Finding no merit in the contention, we will affirm the juvenile court's orders.

## BACKGROUND

Mother and the minor's father W.G. (father) were separated, and were involved in a contentious child custody dispute. In 2019, the family court ordered that the parents were to have joint legal and physical custody of the minor.

In September 2020, the Yolo County Health and Human Services Agency (Agency) filed a dependency petition on behalf of the minor (then almost 12 years old and diagnosed with Down Syndrome) alleging sexual abuse of the minor by father and risk of harm due to mother's fixation on the sexual abuse allegations and her own mental health issues. The minor was removed from father's custody and placed with mother. Thereafter, the juvenile court ordered that father not be allowed to visit the minor.

The Agency reported that although the minor was 12 years old, she was developmentally six to eight years old. As a result, she lacked the capacity to protect herself and was at an increased risk of vulnerability to abuse. Father denied the allegations of sexual abuse. Mother reported a diagnosis of PTSD and depression. It appeared that her decision-making and mental health were impacting her ability to provide safe and stable parenting for the minor. The Agency recommended that both parents participate in psychological evaluations to better tailor services and evaluate whether contact with the minor would be appropriate.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

The juvenile court sustained the petition and exercised dependency jurisdiction over the minor on April 16, 2021. Several months later, the Agency reported that child psychology expert Dr. Urquiza completed an evaluation of the parents and, given the sustained allegations of sexual abuse, recommended no contact or visitation between father and the minor. The juvenile court so ordered, and further ordered family maintenance services for mother and reunification services for father.

By September 2022, the minor was regressing. The juvenile court ordered a psychological evaluation for the minor. The following month, the Agency filed a supplemental petition (§ 387) alleging risk of harm to the minor due to mother's mental health issues and inability to complete basic caregiving tasks related to the minor's educational and developmental needs, such as providing a clean and safe home environment, and talking about father in front of the minor. The Agency reported that the minor was no longer attending school.

The juvenile court ordered the minor removed from mother's care. Out of mother's custody, the minor improved. The juvenile court sustained the allegations in the section 387 petition and ordered reunification services and a psychological evaluation for mother.

In April 2023, the juvenile court received the psychological evaluation for father. The evaluator concluded, among other things, that restarting visitation between the minor and father could be beneficial for the minor so long as father refrained from discussing mother while with the minor. The evaluator recommended that visits be supervised, preferably by someone present at all times during the visit, and that the supervisor be "knowledgeable about trauma-related symptoms, sexual abuse, and developmental disabilities" to ensure the minor's behaviors were accurately observed and analyzed. Unsupervised visits were not recommended until caregivers could be reasonably assured that the minor could communicate to a trustworthy adult about any inappropriate behavior by father.

The contested section 366.26 hearing commenced on August 15, 2024.  Mother was not present but was represented by her attorney who agreed to proceed in her absence.  The Agency requested, and minor's counsel agreed, that the juvenile court should grant a legal guardianship and terminate dependency jurisdiction with orders for "professionally supervised visits or visits supervised by a mutually agreed upon third party" for mother.  In closing argument, the Agency reiterated its request.

Mother's counsel requested legal guardianship with continued oversight by the juvenile court to facilitate, among other things, any future adjustments to visitation.  Mother's counsel stated, "I don't disagree that it's appropriate for the Court to order [a] mutually agreed upon visit[ation] monitor," and later stated, "I would also suggest that the Court order what [the Agency] requested with respect to the visit[ation] monitors."  However, mother's counsel also expressed concern that, without continuing court oversight, mother might not be able to afford professionally supervised visitation given that she was living in a shelter and the cost would "essentially bar visitation from occurring going forward."  Counsel requested that the court continue dependency jurisdiction and order the Agency to continue supervising visits in some fashion, noting that if the court terminated dependency jurisdiction and required professionally supervised visitation at mother's expense, "it will essentially bar visitation from happening."

The juvenile court inquired whether the parties had discussed alternative visitation supervisors.  Mother's counsel responded that the parties had come up with a list of "lower cost" professionally supervised visitation services but at least one of those was cost prohibitive and there was a question as to whether the minor's caregiver would be willing to drive to locations based out of Sacramento.  Minor's counsel argued the parties had actually come up with a list of "low and no-cost" visitation supervisory options but mother had not utilized that list to locate a suitable provider, nor had she suggested an alternative option.  Minor's counsel added:  "To say that mother would be completely

4

unable to afford any form of supervision, is indeed speculative when there's a possibility that low and/or no-cost supervision does [exist], therefore not precluding it entirely." Mother's counsel responded that she was not aware of any no-cost options and reiterated that the lower-cost options proposed by the Agency were still out of mother's price range. Upon the juvenile court's inquiry, minor's counsel confirmed that the minor's caregivers (the proposed guardians) were willing to supervise visitation.

The juvenile court ordered a plan of legal guardianship with the minor's current caregivers, terminated dependency jurisdiction, and ordered that mother have four hours of visitation per month with a mutually agreed upon visitation supervisor.

DISCUSSION

Mother contends the juvenile court improperly delegated to the minor's legal guardians the authority to determine whether mother's visitation with the minor would occur at all by requiring the parties to mutually agree upon a visitation monitor. The Agency argues mother forfeited her claim by agreeing to the terms of the court's order and, in any event, her claim lacks merit.

As to forfeiture, it is true that mother's counsel initially appeared to agree that it was appropriate for the juvenile court to order a mutually agreed-upon visitation supervisor. But mother's counsel also expressed concern and argued that, if dependency jurisdiction were terminated, mother could not afford the required supervisor, which would prohibit visitation altogether. On this record, we exercise our discretion to consider mother's contention on the merits. (*In re M.R.* (2005) 132 Cal.App.4th 269, 272.)

When legal guardianship is ordered, the juvenile court must make an order for parental visitation, unless visitation would be detrimental. (§ 366.26, subd. (c)(4)(C); see *In re M.R., supra*, 132 Cal.App.4th at p. 274.) Legal guardians must not be given absolute discretion to determine whether visitation will occur. (*M.R.*, at p. 274.) The power to determine the right and extent to visitation by a noncustodial parent in a

5

dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. (*In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476-1477; see *In re Chantal S.* (1996) 13 Cal.4th 196, 213-214 [rule of nondelegation applies to exit orders issued when dependency jurisdiction is terminated].) However, a visitation order may delegate to a third party the responsibility for managing the details of visits, including the time, place, and manner. (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.) The juvenile court has broad discretion in fashioning a visitation order when it issues letters of guardianship, and a reviewing court weighs such an order for abuse of discretion. (*In re A.C.* (2011) 197 Cal.App.4th 796, 799.)

Here, the juvenile court ordered that mother would have four hours of visitation per month, with visits to be supervised by a mutually agreed-upon supervisor. The juvenile court was told that the parties had already collaborated on developing a list of "low and no-cost" visitation supervision services and had confirmed that the minor's caregivers (the proposed guardians) were willing to supervise visitation.

Mother does not argue, and we find no indication in the record, that there was any animosity between mother and the proposed legal guardians such that the juvenile court might have questioned their ability to continue to work together to find a suitable visitation supervisor, even without the benefit of court or Agency oversight. In that regard, the juvenile court noted that, while it might be "difficult to find low-cost visitation providers," it was "speculative . . . to conclude that there is no potential way to provide [mother] visitation without keeping the case open."

We conclude the visitation order granting mother visitation rights and expressly stating the frequency and duration of the visits, while requiring mother and the legal guardians to agree on a visitation supervisor, did not constitute an unlawful delegation of judicial authority. (*In re Moriah T., supra*, 23 Cal.App.4th at p. 1374 ["Only when a visitation order delegates . . . the absolute discretion to determine whether any visitation occurs does the order violate the statutory scheme and separation of powers doctrine."].)

6

## DISPOSITION

The juvenile court's order is affirmed.


                                                                         /S/
                                                              MAURO, J.


We concur:


     /S/
EARL, P. J.


     /S/
RENNER, J.